[Civ. No. 27406. First Dist., Div. Four. July 17, 1970.]

JIM L. JENSEN, JR., et al., Plaintiffs, Cross-defendants and Respondents v. CLYDE DALTON et al., Defendants, Cross-complainants and Appellants.

**COUNSEL**

Kubby, Pritchard & Cohen and Lee. J. Kubby for Defendants and Appellants.

Colin Peters and Beverly A. Gregerson for Defendants and Respondents.

**OPINION**

**CHRISTIAN, J.**—Clyde and Mary Dalton (herein called sellers) appeal from a judgment, after nonjury trial, awarding Jim and Carol Jensen (herein called buyers) damages in the amount which buyers had deposited in escrow under a contract to purchase real estate. The judgment also denied relief to sellers on their cross-complaint for damages due to buyers' breach of the same contract.

The contract called for the sale of sellers' home to buyers at a price of $36,950. Buyers paid $7,010 of the price into escrow, and later released $5,000 of that amount to sellers, to be used as a down payment on another home. In a few days buyers, without lawful excuse, repudiated their agreement to purchase the property and demanded the return of their deposit. Sellers refused to return the deposit; the present action ensued.

The pleadings establish that the fair market value of the property was at all pertinent times equal to the agreed purchase price. Sellers nevertheless sought damages on the cross-complaint, and presented the following offer of proof:

"At date of breach, because of the nature of the market at that date although the gross sales price of the property would be the same, in order to sell at that price, Defendant and Cross-Complainant would have to employ a real estate broker to sell the property at a commission of six (6%) percent of the sales price, or two thousand two hundred seventeen ($2,217.00) dollars.

"At date of breach, to sell at that gross sales price, Defendant would have been required to pay financing charges for a new buyer to secure a loan, which would require the payment of five (5%) percent of the loan to be secured (5% x $29,500.00) or one thousand four hundred seventy-five ($1,475.00) dollars.

"That the state of the market at the date of repudiation was such that a prospective buyer would require seller to pay the proposed sewer assessment to be levied on this property of at least two thousand four hundred three ($2,403.00) dollars.

"That Plaintiff interfered with Defendant's ability to use the subject property in that Plaintiff gave Defendant authority to withdraw five thousand ($5,000.00) dollars from the escrow for this transaction as a deposit on a new residence for Defendant. Defendant deposited said five thousand ($5,000.00) dollars toward the purchase of the new residence. Upon Plaintiff's breach, Defendant was required to secure financing for the new residence he had purchased at a cost to Defendant of Four Hundred Twenty ($420.00) dollars. Furthermore, Defendant is now required to maintain two (2) residences and commute a distance of two hundred sixty-six (266) miles round trip once a week at ten (10¢) cents per mile to care for the subject realty, and pay for utilities and taxes at the subject property to his detriment in the amount of seven hundred eighteen ($718.00) dollars.

"Further, Defendant has been required to and has employed legal counsel to defend and prosecute this action to his damage in the amount of one thousand ($1,000.00) dollars."

 The trial court rejected this offer of proof and gave judgment for buyers, in the full amount of the payment they had made. Sellers appeal, contending that the trial court erred in rejecting the offer of proof.

In *Royer* v. *Carter* (1951) 37 Cal.2d 544 [233 P.2d 539], the California Supreme Court held that "[g]iven the rule that the value of the property to the seller under section 3307 [of the Civil Code] is ordinarily the market value at the time of the breach, . . . injustice could result if the vendor were not allowed to recover damages for additional expenses caused him by the vendee's breach. Thus in a case where the property is sold at the market value and that value remains constant until after the breach, and the property is then resold at the same price, the vendor could recover no damages under section 3307. He would be forced to pay, however, in addition to the expenses of the first sale, the expenses of the resale. When such additional expenses are the natural consequence of the breach, they may be recovered in addition to those provided for in section 3307." (*Id.* at p. 550.)

 The anticipated expenses of the contracted-for sale must be excluded from the recovery; otherwise the seller would be in a better position than if the sale had been consummated. Buyers claim that under the *Royer* rule expenses which sellers "might have incurred on a hypothetical resale of the property at date of breach were not expenses *in addition* to the first sale expenses, and so were not compensable." But the *Royer* decision indicates generally that it is proper to award damages for expenses in a second sale to the extent that they exceed the expenses assumed by the seller under the breached contract. Here the sellers were to pay no broker's commission. They offered to prove that in order to find a new buyer and con-

summate a sale it would be necessary to pay a commission and assume other costs. The offer to prove such items should not have been rejected

The prospective sewer assessment, utilities fees, and taxes mentioned in the offer of proof may also be allowable as damages under Civil Code section 3307: "The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him." Here, sellers offered to prove that the claimed taxes, utilities, and sewer assessments were all liabilities which fell upon the title holder after the contract was entered into and before the breach. Thus, the net value of the land to appellants at date of breach had, subject to proof, been diminished by these amounts; sellers should have been allowed to prove such amounts as damages.

■ Where sellers contracted to buy another house in reliance on buyers' promise, the expenses of commuting between the new and old residences may be recoverable to the extent they were reasonably foreseeable at the time of contracting. (See *Douglass* v. *Guardian Holding Corp.* (1933) 132 Cal.App. 585, 589 [23 P.2d 80]; Corbin on Contracts, § 1035; see generally, Fuller and Perdue, *The Reliance Interest in Contract Damages* (1936) 46 Yale L.J. 52-96, 373-420.) In the present case, the sellers' purchase of a new residence may have been foreseeable, so that the above expenses, if they arose directly from the purchase of the new residence, may also have been foreseeable. Accordingly, it was error to refuse to allow sellers to attempt to prove the above-mentioned finance fees and commuting expenses as damages arising from the buyers' breach.

■ Finally, sellers claim that the attorneys' fees incurred in the present action are likewise compensable damages arising out of buyers' breach. But "in the absence of some statutory right or contractural provision, attorney's fees are to be paid by the party employing the attorney. (Code Civ. Proc., § 1021; *Prentice* v. *North American Title Guar. Corp.*, 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645], and cases cited.)" (*Carroll* v. *Hanover Ins. Co.* (1968) 266 Cal.App.2d 47, 50 [71 Cal.Rptr. 868].) Here, there is no showing of either statutory or contractual authority for an allowance of fees. Therefore it was not error to reject sellers' offer to prove attorney's fees as damages caused by buyers' breach.

The judgment is reversed. The purported appeal from the order denying motion for new trial is dismissed.

Devine, P. J., and Rattigan, J., concurred.