[Civ. No. 18473. Fourth Dist., Div. One. Dec. 12, 1979.]

GEORGE F. YACKEY et al., Plaintiffs,
Cross-defendants and Appellants, v.
PACIFICA DEVELOPMENT COMPANY et al., Defendants,
Cross-complainants and Respondents.

**COUNSEL**

Jones, Hatfield, Penfield & Garrett and Clinton F. Jones for Plaintiffs, Cross-defendants and Appellants.

William A. Tookey for Defendants, Cross-complainants and Respondents.

**OPINION**

**STANIFORTH, Acting P. J.**—Plaintiffs George F. Yackey and Alma H. Yackey brought this action to recover money damages for breach of contract (escrow instructions) against the Pacifica Development Company (partnership) and its copartners William R. Swann and Edward Gessin.

Upon trial, the court found the release clause in the escrow agreement so uncertain as to render the entire agreement void, unenforceable and upon that sole basis gave judgment for defendants. Yackey appeals.[1]

## I

Mr. and Mrs. Yackey agreed to sell to the partnership 375 acres of real property located in Fallbrook, California. When the buyers refused to perform the agreement, according to the terms of the escrow agreement, the Yackeys filed this suit for damages for breach of contract. The partnership denied the essential allegations of the complaint and set up affirmative defenses including allegations of fraud in the inducement. The partnership also cross-complained against Mr. Yackey, seeking damages for fraud.

At trial, the defendants abandoned their cross-complaint and rested their whole case upon the premise that the escrow instructions, more particularly the release clause contained therein, were so uncertain as to render the entire contract unenforceable. The trial court after making specific findings in favor of the Yackeys on the existence of the contract, its breach by defendants and $70,785.40 damages, and against the partnership on its fraud contention, concluded "[t]he release clause set forth in the escrow instructions...was so uncertain as to render the entire agreement void and unenforcible [sic] both in equity and in law." And that "[b]ut for [such] invalidity...defendants would have been in breach of contract and plaintiffs would have been entitled to damages" totalling $70,785.40. Judgment was thereupon entered in favor of defendants on the complaint and for plaintiffs (cross-defendants) on the cross-complaint. The Yackeys appeal; defendants have not appealed the adverse ruling on their cross-complaint.

## II

The Yackeys owned 375 acres of real property, unplanted, undeveloped, consisting of brushlands, canyons and rolling hills. In 1972, they had agreed to sell the property to Sam Ku for the total purchase price of $750,000. That agreement was not fulfilled and the Yackeys were sued by Ku for specific performance. In connection with that action, Ku recorded a lis pendens on the Yackeys' property which was not released

---

[1]Pending this litigation, Mrs. Yackey has died.

of record until September 23, 1976. The Yackeys sought to remove this cloud on title to their real property and offered to settle Ku's lawsuit by the paying of some $20,000. Their offer was rejected by Ku. He demanded $123,500 for a dismissal.

In April 1975, while the Ku v. Yackey lawsuit was pending, Swann was introduced the property by a real estate broker, Dorothy Gessin, wife of partner Edward Gessin. Partner Swann was an experienced builder and developer. He had built roughly 5,000 units and put together 8 to 10 subdivisions. Swann and Mrs. Gessin met the Yackeys at the property and discussed the physical characteristics of the land at that time. Thereafter, Swann and Gessin instructed Mrs. Gessin to make an offer on the property. There were no further meetings with the Yackeys until after the escrow was signed. Mr. Yackey consulted his attorney about the offer and was advised not to accept it. However, Yackey, against his lawyer's advice, agreed to accept the Swann offer. Swann selected the escrow company—one which he frequently used—to handle the sale and Swann telephoned the information to the escrow officer which was in fact used in preparation of the escrow instructions. Swann caused to be included in the escrow agreement an acknowledgment of the "lis pendens" (Ku's) action and an instruction to the officer "to close escrow prior to its release." Before the signing of the instructions, Mr. Swann had been advised by the Yackeys' attorney of the nature of the lis pendens (Ku's) action. The instructions made specific provision for Swann to assume the defense of that action.

By the terms of the escrow instructions, so dictated by Swann, $750,000 was to be paid for the 375 acres, $150,000 to be paid at close of escrow and the balance, $600,000, to be paid in the form of a promissory note secured by a purchase money trust deed.

Swann directed the escrow officer to include in the instructions a provision for the following release clause to be included in the trust deed: "Provided the trustor is not then in default hereunder or with respect to the payments due on note secured hereby, at his request, a partial reconveyance may be had and will be given from the lien or amount to apply on the principal of said note based on the rate of $2500.00 for each acre to be so reconveyed."

These escrow instructions were dated April 30, 1975, and provided that the sale was to close "on or before 120" days from that date. Es-

crow did not close within the 120-day period and thereafter several attempts were made to find a means whereby the date for closing could be extended and at the same time to allow the Swann-Pacifica to commence their development of the property. These efforts proved fruitless, and finally, by letter dated December 2, 1975, Swann's attorney stated that Yackeys' last offer was unacceptable and Swann had no counter-proposal to submit at that time. On that date, the attorney for the Yackeys wrote Swann's attorney to announce that the Yackeys considered Mr. Swann to be in breach of the contract. He had, in fact, not performed any of the terms specified to be performed in the escrow agreement.

## III

The trial court concluded the release clause was uncertain and that uncertainty rendered the whole agreement void upon the reasoning expressed in *White Point Co.* v. *Herrington*, 268 Cal.App.2d 458, 466 [73 Cal.Rptr. 885], where it was said: "In recent years subordination agreements have frequently been reviewed by appellate courts with respect to the issues of uncertainty, materiality and fairness. Where the subordination provisions have been found uncertain and incapable of ascertainment by reference to an objective standard, the contracts have been deemed void for the uncertainty of a material provision [citations]."

In *White Point Co.* v. *Herrington, supra,* 268 Cal.App.2d 458, the parties, with numerous terms as yet unresolved, including the trust deed obligation and others relating to the financing of the security in the event of future development, disregarded the escrow officer's advice that they first consult a lawyer to resolve the uncertainties, caused the escrow instructions to be prepared and signed. Among the matters which remained unresolved were the terms of contemplated release clause. The instructions, after providing for a trust deed note, simply stated that the note was to have a release clause providing for partial releases of $3,000 per acre. (*Id.,* at p. 462, fn. 1.) The buyers thereafter deposited the proposed form of release clause in escrow; it was never approved by the sellers. Thus, *White Point, supra,* is a classic example of an agreement to agree. Upon such factual base, the reasoning and the conclusion of the *White Point* court is sound contract law.

■ However, the *White Point* rule does not fit this case. If we assume for purposes of discussion the release clause is uncertain, yet such

fact does not render the entire contract ipso facto void; only where the terms of such clauses are to be determined at a later date and by mutual consent of the buyer and seller—in effect an agreement to agree—will the contract be deemed void from its inception. (*Stockwell v. Lindeman*, 229 Cal.App.2d 750 [40 Cal.Rptr. 555]; *Woodworth v. Redwood Empire Sav. & Loan Assn.*, 22 Cal.App.3d 347 [99 Cal.Rptr. 373].) However, as was said in *Schomaker* v. *Osborne*, 250 Cal.App.2d 887, 893 [58 Cal.Rptr. 827]: "The necessity of future agreement on limited phases of the transaction does not prevent birth of a binding contract upon acceptance since, if the parties cannot agree on those phases, each may force the other to accept the determination of a court of equity." ■ And in *Eldridge* v. *Burns,* 76 Cal.App.3d 396, 425 [142 Cal.Rptr. 845], it was held a release clause will not be deemed uncertain merely because the parties delegate to the buyer or to the third party lender the right to determine the property to be released or the power to detail terms of construction in permanent loans.

Similarly, if such determination is reserved by or given to the seller, a contract is not thereby rendered unenforceable for uncertainty. (*Ontario Downs, Inc.* v. *Lauppe,* 192 Cal.App.2d 697 [13 Cal.Rptr. 782].) Where, however, such delegation is made to the buyer and it does not contain terms that will sufficiently protect the *seller's* security from undue risk, the clause and/or the entire contract may be vulnerable to the claim that it is not, as to the seller, just and reasonable. (*Handy* v. *Gordon,* 65 Cal.2d 578 [55 Cal.Rptr. 769, 422 P.2d 329, 26 A.L.R.3d 848]; *Eldridge* v. *Burns, supra,* 76 Cal.App.3d 396.)

■ Further, the claim of unfairness may be asserted only in an action for specific performance. It is not available to the party defendants here in an action for damages for breach of contract. It may be asserted only as a defense and only by the person as to whom the contract is unjust and unreasonable. In this instance it would be the Yackeys who would have the right to claim that the provision for release was unjust. (Civ. Code, § 3391, subd. 2; *Dessert Seed Co.* v. *Garbus,* 66 Cal.App.2d 838 [153 P.2d 184].)

Finally, if there is an uncertainty or unfairness in the release clause (and if we assume further such clause is not an agreement to agree at a future time) it *may not* be asserted by the party who was responsible for such uncertainty or unfairness. In this case the defendants were responsible for the precise language of the release clause. (*Lawrence* v.

*Shutt,* 269 Cal.App.2d 749, 766 [75 Cal.Rptr. 533]; *Woodworth v. Redwood Empire Sav. & Loan Assn., supra,* 22 Cal.App.3d 347.)

In *Handy* v. *Gordon, supra,* 65 Cal.2d 578, the Supreme Court upheld a trial court's refusal to grant specific performance. The Supreme Court said: "[T]he contract leaves defendants with nothing but plaintiff's good faith and business judgment to insure them that they will ever receive anything for conveying their land. Such a contract is not as to them 'just and reasonable' within the meaning of Civil Code section 3391." (*Id.,* at p. 582.)

■ The foregoing case authorities compel our conclusion that if the release clause here were in fact uncertain, that fact will not, in and of itself, render the entire contract void or voidable. Only when the provision contemplates that the actual terms of the clause to be included in the deed of trust will be determined at a future date, and by mutual agreement of the parties, would the entire contract be deemed void from its inception. The sales escrow agreement here contained no such agreement. *To the contrary, the precise wording of the actual release clause to be so included was set forth in haec verba in the instructions.*

Furthermore, it would be the right of the Yackeys to avoid the contract were specific performance sought by these defendants. Prejudice if any which might flow from the exercise of the release would be felt by the Yackeys. Their security would suffer if defendants sought to enforce their rights under the clause in an unjust or unreasonable fashion. However, the Yackeys did not seek to disaffirm the contract during the entire term of the escrow. Until the time of the breach, they continued to treat the agreement, including the release clause, as a binding subsisting contract.

Finally, and of great significance is the form of action here. This is not an action for specific performance by the buyers but rather an action by the seller for damages. A greater degree of certainty is required in terms of the agreement which is sought to be specifically enforced in equity than is necessary in a contract which forms the basis of an action for damages. (*Lawrence* v. *Shutt, supra,* 269 Cal.App.2d 749, 761; *Boyd* v. *Bevilacqua,* 247 Cal.App.2d 272, 287-288 [55 Cal.Rptr. 610]; *Janssen* v. *Davis,* 219 Cal. 783, 787 [29 P.2d 196]; *Eastwood Homes, Inc.* v. *Hudson,* 161 Cal.App.2d 532, 540 [327 P.2d 29].)

## IV

The discussions thus far have been based upon the premise of an uncertain release clause. This is not the fact here. The release clause language here is clear, unambiguous. It provides in simple terms that for each $2,500 paid on the principal balance on the promissory note, one acre of the conveyed land be released from the lien of deed of trust securing the note.

The partnership does not suggest the clause was intended to have any other than its plain, clear meaning. Rather, they contend uncertainty arises *from what remains unstated* in the clause. They argue from *White Point Co.* v. *Herrington, supra*, the lack of the further refinement in the language would allow the buyers to select choice portions of land for release and leave the seller's security including only the undesirable parts. Here the record is absent any evidence which would suggest that these buyers would seek to obtain releases of portions of the best portions of the property and allow the unusable portions to remain. What the defendants seek to do is to make a contract uncertain, which on its face is free and clear from any ambiguity; they wish to speculate upon their own future inequitable approach to obtaining releases. The case of *Simmons* v. *Dryer*, 216 Cal.App.2d 733, 743 [31 Cal.Rptr. 199], disposes adversely of such contention. The "buyers were not free to act arbitrarily...."

And finally, in *Eldridge* v. *Burns, supra*, 76 Cal.App.3d 396, a petition for specific performance was denied by the trial court. The release clause provided "any...acreage selected for release by Trustor shall be contiguous to the land previously released" and provided that no acreage could be released "unless there is afforded to the remaining land...rights of ingress and egress...." (*Id.*, at p. 407, fn. 7.) The appeal court made this most pertinent statement: "So in this case *we conclude that the release agreement was not invalid because of uncertainty. If the seller is entitled to be relieved from specific performance of the release agreement it must be because...it would not be just or reasonable to specifically enforce the agreement* (Civ. Code, § 3391, subd. 2;...) *and, in the latter event, the buyer should be entitled to restitution or damages....*" (*Id.*, at pp. 426-427; italics added.)

## V

We conclude that the escrow agreement here was not void. It did not contain an agreement to agree in the future. The particular release

clause is certain but perhaps unfair, or capable of being used unfairly as to the seller. However, such potential unfairness to the seller does not render the entire contract void for uncertainty. Based upon these factual-legal conclusions, the judgment must be reversed and the matter remanded to the trial court with instructions to enter judgment in favor of the Yackeys and for the amount of damages found by the trial court, to wit, the sum of $70,785.40—if such sum is legally the correct measure of damage.

## VI

On this appeal, the partnership contends an improper rule for measurement of damages was used by the trial court. They urge that the "normal" rule should apply, to wit, the difference between the contract price and market value of the property at the time of the breach. This rule necessarily presupposes that the vendor was free to use or dispose of the property on the date of breach. (*Honey* v. *Henry's Franchise Leasing Corp.*, 64 Cal.2d 801, 805 [52 Cal.Rptr. 18, 415 P.2d 833]; *Abrams* v. *Motter*, 3 Cal.App.3d 828, 848 [83 Cal.Rptr. 855].) Here the Yackeys were not in a position to use or dispose of their property by virtue of the lis pendens, Ku's pending action. The measure of damages applied by the trial court included thoses items of damages which would place the Yackeys in the same position they would have been had the promissor performed the contract. This was a legally correct and applicable rule of damages. (*Coughlin* v. *Blair*, 41 Cal.2d 587, 603 [262 P.2d 305].) As a result of the buyer's failure to perform, the Yackeys were required to pay additional attorney fees—agreed to be assumed by the partnership in defense of the Ku case; additionally they paid property taxes on the property after the date of the breach. Finally, the trial court allowed interest on the monies due but not paid by the defaulting buyers. The trial court in choosing not to compute the damages based upon the difference between the market value and the contract price found: "The end result of the lis pendens was to effectively render the real property unmarketable in the general market place" and further found in agreeing to sell the real property pursuant to the terms set forth in the escrow instructions, the benefit which the Yackeys sought was immediate income from the property, that is to say interest from the proceeds of the sale. The court concluded but for the invalidity resulting from the release clause the Yackeys would have been entitled to recover $62,316 representing interest on the sale price between August 30, 1975, and September 23, 1976.

The depreciated value of the Yackey property, due to the lis pendens, was transitory in nature. When this impediment was removed as a result of a judgment entered in the Yackeys' favor in the Ku action, the Yackeys were able to resell the property at its true market value free from the inhibiting factor created by the lis pendens. While the "normal" rule of damages is different from that applied by the trial court, it does not purport to be an exclusive rule measure of damages. (*Royer* v. *Carter*, 37 Cal.2d 544, 550-551 [233 P.2d 539].)

■ The vendor is entitled upon the default of the vendee to additional damages caused thereby in an amount necessary to give him the benefit of his bargain. (*Honey* v. *Henry's Franchise Leasing Corp.*, *supra*, at p. 805.)

We conclude that the measure of damages determined by the trial court adequately placed Yackeys in the position they would have been had defendants performed the contract.

The judgment is reversed and remanded with directions to the trial court to enter judgment for plaintiff for the sum of $70,785.40.

Wiener, J., and Focht, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 7, 1980.

---

*Assigned by the Chairperson of the Judicial Council.