[No. B002946. Second Dist., Div. Six. Apr. 14, 1986.]

MANSOUR ASKARI, Plaintiff, Cross-defendant and Appellant, v.
R & R LAND COMPANY et al.,
Defendants, Cross-complainants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to rule 976.1 of the California Rules of Court, the portion of the opinion to be published follows.

COUNSEL

Hatch & Parent, Susan F. Petrovich and Mark A. Lester for Plaintiff, Cross-defendant and Appellant.

Monty H. Amyx for Defendants, Cross-complainants and Appellants.

OPINION

**GILBERT, J.**—Plaintiff and cross-defendant Mansour Askari appeals a judgment of damages against him for breach of contract to purchase real property, raising issues of contract interpretation and allowance of damages under the Civil Code.[1] Defendant and cross-complainant R & R Land Company (R & R) also appeals the amount of damages the trial court awarded.

. . . . . . . . . . . . . . . . . . . . . . . . .*

We reverse the judgment and remand for factual determinations regarding consequential damages. The trial judge must determine the following: (1) Whether the consequential damages were reasonably foreseeable at the time of contracting; (2) whether the property had any value of use to R & R during the period of breach through trial; (3) whether R & R made diligent efforts to resell the property after Askari breached the contract and (4) whether the notice of lis pendens Askari filed against the property prevented such resale. We also remand for additional evidence of the property's value at the time of trial and a redetermination of damages.

FACTS

Mansour Askari agreed to purchase 84 acres of Santa Barbara real property from R & R for $1.25 million. Both Askari and Raymond Chavez, the

---

[1] All statutory references are to the Civil Code unless otherwise specified.
*See footnote, *ante,* page 1101.

president and sole stockholder of R & R, were sophisticated real estate investors and Chavez was a real estate broker. Askari and Chavez did not negotiate directly in forming the contract but acted through their joint real estate broker.

Askari's offer proposed a downpayment of $312,500 and financing provided by R & R by a second deed of trust on the property securing an obligation of $869,723. The terms of this proposed promissory note required 11 percent interest only payments for one year and thereafter quarterly payments of interest and principal amortized over seven years but due and payable in five years. R & R's counteroffer, accepted by Askari, stated: "Seller accepts all of the terms and conditions set forth . . . with the following changes or amendments: . . . principal and interest balance all due 5 years from close of escrow."

Askari testified he believed the terms of the counteroffer excused payments of principal and interest until a balloon payment became due in five years. He refused to execute escrow instructions requiring a promissory note with quarterly principal and interest payments. Chavez refused to execute escrow instructions requiring a promissory note without interim payments and advised the escrow officer with incredulity that "[n]o person, with mental facilities intact, would accept a trust deed with no principal or interest payments for 4 years." The escrow thus failed for lack of common executed instructions and the parties sued one another for breach of contract.

Chavez cancelled the escrow on March 24, 1981. Askari filed suit and a notice of lis pendens on May 1, 1981, five weeks later. The trial judge found that Askari breached the contract on March 25, 1981. Sixteen months later, at the conclusion of the trial, the judge ordered the lis pendens expunged. Chavez testified that during the interim he was unable to sell the property because the real estate brokers with whom he attempted to list the property would not accept the listing with the lis pendens.

The trial judge found, after a court trial, that the contract required interim principal and interest payments. He awarded R & R $172,730 in damages under the reasoning of *Yackey* v. *Pacifica Development Co.* (1979) 99 Cal.App.3d 776, 786-787 [160 Cal.Rptr. 430].)

. . . . . . . . . . . . . . . . . . . . . . . . .*

Both Askari and R & R appeal the court's ruling on damages. Askari contends he is entitled to an offset against consequential damages for the

---

*See footnote, *ante,* page 1101.

property's appreciated value either at time of breach or time of trial. R & R argues it is entitled to additional damages for the property's diminished value at time of trial.

DISCUSSION

. . . . . . . . . . . . . . . . . . . . . . . . . . . .*

## I. CONSEQUENTIAL DAMAGES.

Both Askari and R & R appeal the measure of damages awarded R & R. The trial judge awarded R & R $172,720 in damages, consisting of $33,112 in lost interest on the downpayment from the date of breach through judgment; $7,661 in interest payments R & R made on the note secured by the first deed of trust on the property for that period; $119,739 in interest payments R & R would have received on the proposed seller financing to Askari for that period: $1,533 in real estate taxes; and $10,675 in attorneys' fees.

Askari questions the propriety of an award of consequential damages during the period the notice of lis pendens was placed on the property because the filing of a notice of lis pendens is absolutely privileged. (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 379 [295 P.2d 405].) He also claims he is entitled to an offset against any consequential damages from the excess of the property's fair market value (valued either at time of breach or at time of trial) over the contract price. (*Smith* v. *Mady* (1983) 146 Cal.App.3d 129, 133 [194 Cal.Rptr. 42].) R & R contends it is entitled to increased consequential damages for any postbreach depreciation in the property's value. (*Honey* v. *Henry's Franchise Leasing Corp.* (1966) 64 Cal.2d 801, 805 [52 Cal.Rptr. 18, 415 P.2d 833].) Both arguments depend upon a fair market valuation established by opinion evidence rather than a resale price as occurred in *Smith* v. *Mady, supra.*

Section 3307 is the statutory measure of damages for breach of a contract to purchase real property. It provides that the measure of damages suffered by the seller of real property against a defaulting buyer is the excess, if any, of the amount of the contractual sales price over the value of the property to him.[2] ■ The value of the property to the seller is considered to be the fair market value of the property on the date of the breach. (*Abrams* v.

---

*See footnote, *ante,* page 1101.

[2]Section 3307 provided at the time of trial herein: "The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him."

*Motter* (1970) 3 Cal.App.3d 828, 840 [83 Cal.Rptr. 855].) Here, R & R did not seek this statutory measure of damages as it contended the property was worth the contract price on the date of the breach.

## A. OPERATING EXPENSES.

■ Our Supreme Court has held, however, that a seller may receive additional damages resulting from the buyer's default. (*Royer* v. *Carter* (1951) 37 Cal.2d 544, 550 [233 P.2d 539]. *Royer* permitted additional damages to the seller for expenses that would not have been incurred had the buyer performed because "injustice could result if the vendor were not allowed to recover damages for additional expenses caused him by the vendee's breach." (*Royer* v. *Carter, supra,* p. 550.)

Courts have also permitted a seller to recover expenses incurred in the ownership and operation of the property after the time of breach where these expenses are "the natural consequence of the breach." (*Royer, supra,* p. 550.) Thus, a seller received recompense for his out of pocket expenses for fire insurance, mortgage interest and property taxes from the date of the buyer's breach to resale of the property. (*Allen* v. *Enomoto* (1964) 228 Cal.App.2d 798, 803-804 [39 Cal.Rptr. 815].) Other courts have awarded damages for lost profits in selling a walnut crop (*Wade* v. *Lake County Title Co.* (1970) 6 Cal.App.3d 824, 830 [86 Cal.Rptr. 182]) or the expenses incurred in commuting between the old and the new residence. (*Jensen* v. *Dalton* (1970) 9 Cal.App.3d 654, 658 [88 Cal.Rptr. 426].) *Jensen* permitted the recovery of these expenses "to the extent they were reasonably foreseeable at the time of contracting." (*Ibid.*)

*Sutter* v. *Madrin* (1969) 269 Cal.App.2d 161, 170 [74 Cal.Rptr. 627] adopts a restrictive view of permissible consequential damages and notes that *Royer* v. *Carter, supra,* was concerned with resale expenses. The most recent opinion on consequential damages, *Smith* v. *Mady, supra,* 146 Cal.App.3d 129, 131-132, follows the *Allen-Wade-Jensen* view of consequential damages and it is this view we also adopt.

These courts have permitted consequential damages, only where the seller has diligently attempted resale after the buyer has breached the contract. (*Smith* v. *Mady, supra,* 146 Cal.App.3d 129, 132.) Thus, *Allen* v. *Enomoto, supra,* permitted the recovery of interim operating expenses because the seller effected a resale in five months—"'the shortest period of time possible.'" (*Allen,* 228 Cal.App.2d at p. 804.)

Courts have also required that the value of the seller's use of the property be offset against the continuing expenses of ownership. (*Smith* v. *Mady,*

*supra,* 146 Cal.App.3d 129, 133.) "The consequential damages of the increased operating costs, less the value of the seller's use of the property, between the date of the buyer's default and the resale of the property, presupposes efforts by the seller to resell the property in the shortest possible time. [Citations.] Each of these cases recognizes that if the seller retains possession, the value of that use must be offset against the operating expenses incurred during this interim period." (Miller & Starr, Current Law of Cal. Real Estate (1985 supp.) § 5.25, p. 106.)

The trial judge here permitted R & R mortgage interest expense and real property taxes from the date of breach through the date of judgment, totalling $9,194. The trial judge, however, failed to make findings that these expenses were reasonably foreseeable, that R & R diligently attempted a resale and that these expenses were over and above the value of the use of the property to R & R during this period. Chavez testified at trial that his operating expenses were $24,429, while his income in avocado sales was only $7,996. The trial judge must make an express finding on this issue.

Upon remand, the trial judge shall make findings concerning R & R's income and expenses from the date breach through the date of judgment, and may consider any further evidence the parties desire to offer. In determining R & R's diligence in attempting to resell the property, the trial judge should consider any testimony regarding the intent of Chavez to sell the property, and should consider R & R's efforts to effect a sale during the five week period between the date of breach and the date Askari filed the notice of lis pendens. He should also consider the effect the notice of lis pendens had upon R & R's resale attempts. If R & R attempted to resell the property, but was unable to do so due to the lis pendens, it should not be deprived of damages consisting of interim operating expenses for the period the lis pendens existed.

### B. Lost Interest.

 The trial judge also awarded R & R $33,112 in lost interest on the down payment of $312,500 and $119,739 in lost interest income on the proposed seller financing to Askari, under the rationale of *Yackey* v. *Pacifica Development Co., supra,* 99 Cal.App.3d 776, 786. In *Yackey,* the sellers sued the buyers for breach of contract when the buyers failed to complete their purchase of 375 acres of undeveloped property. There was a cloud on the property title because a lis pendens had been filed in an earlier action by another prospective purchaser. The defendant buyers had agreed to purchase the property subject to the cloud and to remove it. Sellers' attorney advised the sellers not to sell the property with this condition and also advised the buyers "of the nature of the lis pendens," but sellers and buyers

nevertheless agreed to the sale. (*Yackey,* p. 781.) The court affirmed an award of damages allowing interest on the funds due but not paid by the buyers on both the downpayment and seller financing. (*Yackey,* pp. 781, 786.) It reasoned that these damages were proper since the sellers were not free to use or dispose of the property on the date of the breach: " "The end result of the lis pendens was to effectively render the real property unmarketable in the general market place.' " (*Id.,* at p. 786.)

Askari argues that *Yackey* is not pertinent because Yackey's buyers expressly agreed to remove the lis pendens as part of their bargained for performance and because the filing of a notice of lis pendens is absolutely privileged. (*Albertson* v. *Raboff, supra,* 46 Cal.2d 375, 379.)

We think the *Yackey* rule of damages may be properly applied here providing the trial judge finds, as with the other consequential damages, that R & R diligently attempted to resell the property and the notice of lis pendens made the property unmarketable. The trial judge should also examine R & R's resale efforts expended during the five-week period preceding the filing of the lis pendens in determining this factual issue. The premise of the *Yackey* opinion is that the measure of damages awarded the seller should place him in the same position as had the buyer fulfilled his obligation. (*Yackey, supra,* 99 Cal.App.3d at p. 786.) Application of the *Yackey* rule here fulfills this principle.

 It is true that the only purpose of a notice of lis pendens is to apprise others of the pendency of an action and to warn them against acquiring an interest in the property. (*Albertson* v. *Raboff, supra,* 46 Cal.2d 375, 379.) The recording of the notice is considered to be a publication in the course of a judicial proceeding and absolutely privileged. (*Id.,* pp. 379-380.) The recording cannot be the basis of an action for slander of title, but may, in some cases, be the subject of an action for malicious prosecution. (*Id.,* pp. 382-383.)[3] We do not, however, agree with Askari that the *Yackey* rule impermissibly punishes him for filing a notice of lis pendens.

The possible award of damages here relates but indirectly to the filing of the lis pendens. The damages derive from an effort to place the seller in the same position as if the buyer had performed and are predicated upon the buyer's actions in breaching the contract. If the filing of a notice of lis pendens defeats an award of damages during the period the lis pendens is in effect, a breaching buyer could avoid all consequential damages by filing

---

[3]No reported decision, however, has upheld an award of damages for malicious prosecution for recording a notice of lis pendens. (Cal. Lis Pendens Practice (Cont.Ed.Bar 1983) § 2.3, p. 26.)

a notice of lis pendens. We do not think the seller's consequential damages should be avoided by the buyer so easily.

We disagree with R & R that our application of the *Yackey* rule here is permitted by Code of Civil Procedure section 409.6. That section provides that "[n]othing contained in this title [Recording Notice of Certain Actions—title 4.5] shall affect or limit the liability otherwise existing of any person recording a notice of pendency of action for damages proximately caused thereby." ■ ■ ■ ■ Section 409.6 was enacted in 1968 as part of a statutory scheme to permit a landowner to expunge a notice of lis pendens by posting an undertaking[4] or by challenging the lis pendens as wrongfully recorded. (Code Civ. Proc., §§ 409.2; 409.1.) The Legislature enacted 409.6 in anticipation of the argument that it was abolishing the absolute privilege set forth in *Albertson, supra,* when it enacted the expungement sections. (*Earp* v. *Nobmann* (1981) 122 Cal.App.3d 270, 282 [175 Cal.Rptr. 767]; Cal. Lis Pendens Practice, *op. cit. supra,* § 2.4, pp. 27-28.) It is not pertinent here.

## C. DIMINISHED PROPERTY VALUE.

■ R & R also contends Askari is liable for consequential damages for the diminished value of the property at the time of trial. R & R premises this argument upon its inability to sell the property with the clouded title due to the notice of lis pendens during the period from the inception of the lawsuit until the time of trial.

The valuation of the property at the time of trial was strongly disputed; R & R presented testimony that the property was worth $250,000 less than the contract price and Askari presented testimony that it was worth $150,000 more. We conclude that R & R may recover as consequential damages any diminution in value at the time of trial providing it can establish that it diligently attempted to resell the property from the date of breach forward and that the lis pendens rendered the property unmarketable.

Upon remand, R & R shall bear the burden of proving this factual premise and may offer further opinion evidence on the property's value at the time of trial. (See *infra.*) The trial judge shall then decide if R & R's resale attempts were diligent and if they were hindered by the notice of lis pendens; if diligent, he shall determine the fair market valuation of the property either for further consequential damages to R & R or as an offset against

---

[4]A trial judge may not permit expungement as a matter of course upon the posting of an undertaking. *Stewart Dev. Co.* v. *Superior Court* (1980) 108 Cal.App.3d 266, 275 [166 Cal.Rptr. 450] found that an undertaking may not sufficiently protect a developer-buyer who seeks specific performance of a contract to convey unimproved property.

consequential damages to benefit Askari. (*Infra.*) Depending upon the determination of fair market value at the time of trial, either R & R or Askari may benefit from this valuation.

Generally a buyer's liability for damages becomes fixed at the date of breach and if a decline in value occurs at the time of resale, the seller must bear the loss. (*Royer* v. *Carter, supra,* 37 Cal.2d 544, 550; Cal. Real Property Remedies Practice (Cont.Ed.Bar 1982) p. 133.) This rule of damages, however, is premised upon the seller's freedom to sell the property on that date. "Accordingly, if the vendee has interfered with the vendor's freedom in this respect, by retaining possession or asserting an interest in the property, the vendor may include any additional damages caused thereby in the amount necessary to give him the benefit of his bargain." (*Honey* v. *Henry's Franchise Leasing Corp., supra,* 64 Cal.2d 801, 805.)

One authority has suggested that the buyer's conduct in interfering with successful remarketing of the property should occasion additional damages: "For example, the later date of valuation [when the buyer's conduct ceases] should be applied when the buyer sues the seller for specific performance and records a lis pendens against the property that prevents the seller from marketing the property for resale during the pendency of the action; if the buyer subsequently abandons his action before a judicial determination of the matter or where the court subsequently determines that the claim is without merit, the date of valuation should be the date the seller's title is freed from the cloud of the buyer's lis pendens." (Miller & Starr, *op. cit. supra,* § 5.22, pp. 132-133, fn. 7, interpreting *Honey, supra,* p. 805.)

We recognize that the recording of a notice of lis pendens is not a wrongful action as was the withholding of possession by a vendee in *Honey.* Nevertheless, a seller is entitled to those damages necessary to give him the benefit of his bargain where the buyer's conduct has restricted the seller's freedom to resell his property. If the property is lower in value when the lis pendens is lifted, the buyer may have to pay more damages. This rule is not intended to penalize a buyer who files a lis pendens. Changing conditions in the real estate market may work to the buyer's benefit or to his disadvantage. For example, if the property has increased in value when the lis pendens is lifted, the damages the buyer must pay are accordingly reduced. In some cases the buyer may pay no damages. The buyer's damages are subject to change because the filing of a lis pendens does not place valuation of the property in a state of suspended animation.

D. OFFSET.

■ Askari also contends that he is entitled to an offset against R & R's consequential damages by the excess of the property's fair market value

over the contract price. Askari provided expert testimony at trial that the value of the property, at all times from the date of contracting through the date of trial, was $1.4 million. This appraisal exceeds the $1.25 million sales price by $150,000. Askari cites section 3358 and *Smith* v. *Mady, supra,* 146 Cal.App.3d 129, 133 to support his position. Section 3358 provides: "Except as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides." *Smith* permitted a defaulting buyer to receive credit against the consequential damages awarded against him where the seller obtained a higher sales price several days after the buyer's breach. Askari admits, however, no authority requires an offset for an appreciated market value established solely by opinion testimony rather than by an actual resale price. That is no longer true.

In *Smith* v. *Mady, supra,* the buyer agreed to purchase seller's residence for $205,000. The buyer breached the contract and within several days the seller agreed to sell the property to a second buyer for $215,000. The seller sought consequential damages against the defaulting buyer for mortgage interest, taxes, insurance and utilities from the date of breach to the date escrow closed on the second sale. The buyer sought to offset the $10,000 in sales price appreciation against these damages. The court approved the offset to preclude placing the seller in a better position than if the buyer had performed. (*Smith,* 146 Cal.App.3d at p. 133.)

If the trial judge should find that the value of R & R's property appreciated at the time of trial, then the *Smith* rule should be applied here to offset any consequential damages awarded R & R. This would prevent R & R from receiving an unjust benefit at Askari's expense and would be consistent with section 3358. (Cf. Miller & Starr, *op. cit., supra,* § 5.22, pp. 136-137; (1985 supp.) p. 103.)

If R & R is unable to establish that the property had depreciated in value from the contract price at the time of trial, and Askari establishes by opinion testimony that the fair market value of the property at the time of trial exceeded the contract price, he is entitled to an offset. Also, if the trial judge should find that the notice of lis pendens did not hinder R & R's efforts to diligently resell the property, Askari may be entitled to this offset figured on the fair market value at the time of *breach.* Askari bears the burden of proof in establishing the property's fair market value under any offset theory.

Since neither the trial judge nor the parties had the benefit of our interpretation of existing law contained in this opinion when this action was tried, we are remanding the action to permit the parties to offer additional

evidence, as either may choose, on the issues of damages. Neither party is required to do so, however, and may submit the issues for the trial judge's determination on the evidence already offered.

Accordingly, the judgment is reversed and remanded. Each party is to bear his own costs on appeal.

Stone, P. J., and Abbe, J., concurred.