TAYLOR, J.
 

 FCD Development, Inc. (FCD) appeals a final judgment awarding South Florida Sports Committee, Inc. (SFSC) damages based on FCD’s filing a notice of lis pen-dens. FCD argues that SFSC lacked standing to recover damages and that the trial court erred in awarding damages. We disagree that SFSC lacked standing to recover damages, but reverse because the court used an improper method of calculating damages for a wrongful filing of a lis pendens and because SFSC did not establish that it had a bona fide contract with a ready, willing, and able buyer.
 

 FCD sought to purchase property (hereinafter the “motocross property”) from SFSC based on an agreement originally entered into in November 2001, and subsequently amended nine times. The contract purchase price was $2.9 million. In May 2004, FCD, as buyer, sued SFSC, as seller, asking for specific performance with regard to the purchase of the property. FCD filed a Notice of Lis Pendens in May 2004 and posted a $1 million bond.
 

 Samjaz Holdings, Inc. (Samjaz) held the mortgage to the motocross property. Due to SFSC’s failure to pay the mortgage, Samjaz initiated foreclosure proceedings and recorded its own notice of lis pendens against the property on January 12, 2005.
 

 In June 2005, Ray Parker considered purchasing the property and discussed numbers ranging from $11 to $12 per square foot, or a little over $6 million, but he never made an offer or put anything in writing. When asked if Brian Penick, the owner of SFSC, “indicatefd] to you that he could not engage in sales discussions because of’ the lis pendens, Parker said “no.” When asked if he was “prepared to execute an offer to purchase the property at” $11 to $12 per square foot, Parker said “yes.”
 

 In August 2005, SFSC received an offer from OCO, LLC (OCO) to purchase the property for $5 million. The offer was never accepted by SFSC. Jody Oberholt-zer, the owner of OCO, testified that OCO, as the buyer, did not have the funds available to purchase the property, but he testified that he spoke to several individuals with whom he was then working, “[t]o see if they were interested in buying some more land and building some more warehouses,” to “whet their appetite.” When asked how OCO would have come up with funds available to purchase this property from SFSC, Oberholtzer testified he would have borrowed them, as OCO would have had “[n]o problem with that” in August 2005. Oberholtzer admitted that the contract provided for cash with no financing contingency, which meant OCO would not have been able to buy any time or any money to fund the acquisition of the motocross property. He also indicated he had a little bit of money, “so I think I could have gotten it done.” Oberholtzer never received the contract back from SFSC due to title problems. Oberholtzer agreed that if SFSC had executed the contract, he would have been prepared to move forward with it. But because it was never accepted, OCO never placed the $50,000 initial deposit for which the contract provided.
 

 The trial court heard FCD’s specific performance action and entered final judg
 
 *908
 
 ment for SFSC in September 2006, finding that FCD was not entitled to specific performance. The court then dissolved the lis pendens.
 

 On October 13, 2006, SFSC filed a Motion to Recover Against Plaintiffs Lis Pen-dens Bond and sought to recover damages incurred as a result of the lis pendens. On December 14, 2006, SFSC quitclaimed the deed to Samjaz in lieu of foreclosure.
 

 The trial court heard SFSC’s motion to recover damages at an evidentiary hearing on September 16, 2008. At the hearing, SFSC called an appraiser who conducted appraisals on the property on three separate dates and arrived at the following amounts:
 

 May 27, 2004 $3,492,000.
 

 August 5, 2005 $5,000,000.
 

 September 1, 2006 $6,487,000.
 

 The appraiser agreed that the value of the property had increased over time.
 

 Penick testified he received a verbal offer of $12 per foot (about $6.3 million) from Parker, but SFSC did not pursue this offer because of the pending litigation with FCD. Penick also advised Oberholtzer, after learning of his contract, that he could not go forward with the contract to sell because of the FCD litigation and lis pen-dens and that he would be unable to convey clear title to the property. Penick indicated he would have been ready, willing, and able to convey the motocross property to either of these potential buyers, but did not do so because of the pending litigation with FCD.
 

 After the specific performance trial, Penick hoped he still had time to sell the property before he lost it in foreclosure, but then a notice of rehearing and an appeal were filed. Penick testified he made no efforts to sell the property after the lis pendens was dissolved in September 2006, due to FCD’s filing a motion for rehearing and its appeal. Penick agreed that the lis pendens was dissolved and was not reinstated; despite this fact, he said he still felt it was a cloud on the title, that the rehearing and appeal were “just as bad as a lis pendens because it was still a cloud on the issues.”
 

 The trial court made oral findings that SFSC had standing and was entitled to damages of $538,479.87. It further stated as follows:
 

 The evidence in this case indicates to this Court he could have easily closed on the contract, could have accepted the contract that was offered but for the lis pendens. There were no other impediments to the closing. He had an offer in writing. There were discussions. There were appraisal amounts that matched the amount being offered. There’s nothing to show that there was not a bona fide offer and could not have been accepted.
 

 On February 9, 2009, the trial court entered a written order, finding that the filing of the lis pendens resulted in SFSC’s inability to convey marketable title and sell the property. The court found that on August 8, 2005, OCO made a written offer to SFSC to purchase the property for $5 million (a reasonable amount based on the property’s fair market value as of that date), but the lis pendens clouded the title and prevented SFSC from consummating the sale to OCO or any other buyer. SFSC quitclaimed the property to Samjaz on December 12, 2006, in lieu of foreclosure. The court held that SFSC “suffered damages in the amount of $538,479.87 which represents the difference between the $5,000,000.00 offer to purchase the motocross park property by OCO, LLC and the $4,461,520.13 mortgage payoff in October, 2005 as a result of the Lis Pendens filed by [FCD], and is entitled to recover these damages against [FCD] through the Lis Pendens Bond.” The order also over
 
 *909
 
 ruled FCD’s objection that SFSC lacked standing, because SFSC filed its motion to recover these damages prior to executing the quitclaim deed. FCD was ordered to pay a total of $768,280.75 to SFSC.
 

 First, FCD argues that SFSC lacked standing to pursue the lis pendens damage award after it quitclaimed its interests to Samjaz. “Whether a party is the proper party with standing to bring an action is a question of law to be reviewed
 
 de novo.” Westport Recovery Corp. v. Midas,
 
 954 So.2d 750, 752 (Fla. 4th DCA 2007).
 

 Lis pendens “implies a- pending suit, [and] it is defined as the jurisdiction, power, or control which courts acquire over property involved in a pending suit.”
 
 Med. Facilities Dev., Inc. v. Little Arch Creek Props., Inc.,
 
 675 So.2d 915, 917 (Fla.1996). A “lis pendens bond protects the property owner just as the lis pendens itself protects the claimant and the public.”
 
 Haven Ctr., Inc. v. Meruelo,
 
 995 So.2d 1166, 1167 (Fla. Bd DCA 2008) (citing
 
 S & T Builders v. Globe Props., Inc.,
 
 944 So.2d 302, 304 (Fla.2006)). To have standing with regard to a lis pendens action, one must have ownership rights in the property.
 
 Penabad v. A.G. Gladstone Assocs., Inc.,
 
 823 So.2d 146, 147 (Fla. 3d DCA 2002).
 

 Because SFSC incurred potential damages while the underlying suit was pending, and subsequently filed its motion to recover damages against the lis pendens bond in October 2006, while it still owned the property (it quitclaimed the property to Samjaz in December 2006), the trial court did not err in holding that SFSC had standing. Accordingly, we affirm on that argument.
 
 See Bush v. Fiore,
 
 899 So.2d 1144, 1145 (Fla. 4th DCA 2005) (holding the trial court erred in finding the appellants lacked standing to proceed in their misrepresentation action and held that although the appellants no longer owned the house, because they lost it to a foreclosure, the appellants still had standing to proceed in their damages claim because the action was filed before they lost the house).
 
 Contra Penabad,
 
 823 So.2d at 147 (holding the appellant lacked standing because
 
 at the time of her motion to dissolve lis pendens, the appellant previously quitclaimed her interests
 
 in the property to a third party and thus had no ownership rights);
 
 Stas v. Posada,
 
 760 So.2d 954, 955 (Fla. 3d DCA 1999) (holding appellant had
 
 no ownership
 
 rights in the property and thus lacked standing, as she was not affected by the judgment below).
 

 FCD next argues that SFSC was not entitled to damages. A lis pendens is a cloud on title and it constrains the seller’s right to alienability.
 
 Haisfield v. ACP Fla. Holdings, Inc.,
 
 629 So.2d 963, 965 (Fla. 4th DCA 1993). Preliminarily, “[t]o recover damages against a lis pendens bond, the claimant must prove he or she incurred damages attributable to the lis pendens.”
 
 Levin v. Lang,
 
 994 So.2d 445, 446 (Fla. 3d DCA 2008) (citing
 
 Little Arch Creek,
 
 675 So.2d at 917-18).
 

 We have recognized “the proper method of measuring damages for wrongful filing of lis pendens as the difference between the fair market value at the time of the filing of the lis pendens and the fair market value at [the] time of its termination, plus any consequential damages, including attorney’s fees.”
 
 S & T Builders v. Globe Props., Inc.,
 
 909 So.2d 375, 376 (Fla. 4th DCA 2005) (citing
 
 Haisfield,
 
 629 So.2d 963). Because at the time when
 
 Haisfield
 
 was decided, there existed no body of law in Florida on how to calculate damages for the wrongful filing of a lis pendens, we adopted the method of calculation used in
 
 Askari v. R & R Land Co.,
 
 179 Cal.App.3d 1101, 225 Cal.Rptr. 285 (1986).
 
 Haisfield,
 
 629 So.2d at 965-66. According to that
 
 *910
 
 method, to determine damages the trial court should first look at the property’s fair market value on the date the lis pen-dens was filed and the date it was terminated; whether the property increased or decreased in value will determine the award of damages.
 
 Id.
 
 We explained as follows:
 

 The
 
 Askari
 
 court held that the
 
 correct method of assessing damages for the wrongful filing of a lis pendens is to compare the difference between the fair market value of the property at the time of filing of the lis pendens with its fair market value at the time of its termination
 
 .... The
 
 Askari
 
 court explained:
 

 If the property is lower in value when the lis pendens is lifted, the buyer may have to pay more damages. This rule is not intended to penalize a buyer who files a lis pendens. Changing conditions in the real estate market may work to the buyer’s benefit or to his disadvantage.
 
 For example, if the property has increased in value when the lis pendens is lifted, the damages the buyer must pay are accordingly reduced. In some cases the buyer may pay no damages.
 
 The buyer’s damages are subject to change because the filing of a lis pendens does not place valuation of the property in a state of suspended animation.
 

 Id.
 
 (quoting
 
 Askari,
 
 225 Cal.Rptr. at 292) (emphasis added).
 

 The trial court thus should have compared the fair market value at the time the lis pendens was filed and the fair market value at the time it was terminated. SFSC’s expert testified that in May 2004, when the lis pendens was filed, the property’s fair market value was $3,492,000; in September 2006, when the lis pendens was terminated, the property’s fair market value was $6,487,000. In fact, SFSC concedes that the fair market value increased over the requisite period of time.
 

 Because the fair market value increased, the damages FCD was required to pay should have been reduced; FCD may have been relieved from paying any damages at all.
 
 See Haisfield,
 
 629 So.2d at 966. In
 
 Levin v. Lang,
 
 994 So.2d 445, 445-46 (Fla. 3d DCA 2008), the buyer sued the seller for specific performance and filed a notice of lis pendens. The trial court determined that, because the fair market value of the property increased during the lis pendens period, “there were no recoverable damages attributable to filing the lis pendens.”
 
 Id.
 
 at 446. The third district affirmed and held that “changing conditions worked to the buyers [sic] advantage. In fact, the lis pendens actually benefited the sellers. Had the buyer not filed a lis pendens against the property, the sellers may very well have sold the property at the then prevailing market value.... The sellers, therefore, cannot prove that their losses incurred during the lis pendens period (excluding rent loss) resulted in damages which exceeded the increased market value.”
 
 Id.
 
 at 447.
 

 Similarly, here, the property increased in market value. Therefore, SFSC did not suffer any damages based on the fair market value attributable to the lis pendens.
 
 See Levin,
 
 994 So.2d at 447.
 

 SFSC further argues that it is entitled to other damages. In
 
 Haisfield,
 
 after applying the
 
 Askari
 
 fair market value method of measuring damages, we considered the trial court’s award of consequential damages. 629 So.2d at 966. The award of consequential damages is a multi-step process. We explained as follows: “In order to sustain a claim for consequential damages arising out of wrongful lis pendens, a wronged seller must show a diligent yet unsuccessful attempt to resell the property after the buyer breached the agreement.”
 
 Id.
 
 (citing
 
 Askari,
 
 179 Cal.App.3d 1101, 225 Cal.Rptr. 285). To determine whether there was a diligent yet
 
 *911
 
 unsuccessful attempt to resell, the court looks at whether there was a bona fide contract with a potential buyer who was ready, willing, and able.
 
 Id.
 
 In
 
 Haisfield,
 
 we found that there was substantial, competent evidence in the record to support the trial court’s finding that the seller “intended to sell the property, entered into negotiations and a subsequent contract to sell the property and would have succeeded in his attempts, but for the notice of lis pendens on that property.”
 
 Id.
 

 The record in this case does not contain substantial, competent evidence that there was a diligent yet unsuccessful attempt to sell the property that resulted in a bona fide contract with a ready, willing, and able buyer that was thwarted by the notice of lis pendens. To prove that a buyer was ready, willing, and able, SFSC had to show that the buyer was “able to command the necessary money to close the deal on reasonable notice or within the time stipulated by the parties.”
 
 Taylor v. Richards,
 
 971 So.2d 127, 129 (Fla. 4th DCA 2007) (citing
 
 Perper v. Edell,
 
 160 Fla. 477, 35 So.2d 387 (1948)). The test to determine whether a buyer is ready, willing, and able is whether the buyer has a “definite and binding commitment.”
 
 Id.
 
 at 130 (quoting
 
 Hollywood Mall, Inc. v. Capozzi,
 
 545 So.2d 918, 920-21 (Fla. 4th DCA 1989)). In
 
 Taylor,
 
 the buyers contacted a friend and requested a mortgage loan, which he agreed to provide.
 
 Id.
 
 But we found the buyers offered only evidence of a gratuitous promise, because there was “no proof of consideration or other indications of a legally binding commitment.”
 
 Id.
 

 Here, a bona fide contract did not exist, as OCO was not a ready, willing, and able buyer. Oberholtzer testified that OCO, as the buyer, did not have the funds available to purchase the property. No evidence was presented showing that Oberholtzer had a binding commitment. Nothing was presented to show any consideration, and as such, OCO could not be considered a ready, willing, and able buyer. Unlike in
 
 Haisfield,
 
 where everything was set to go forward with the contract, but the parties were unable because of the lis pendens, 629 So.2d at 966, here, all that was presented was a partially executed contract— signed only by Oberholtzer and not accepted by SFSC — and no evidence was presented to support the contract provision of “cash with no contingency financing.” Ob-erholtzer did not provide any financing documents to show a binding commitment and the ability to obtain the loan. Consequently, the contract executed by OCO was not a bona fide contract.
 

 The evidence presented as to Parker was even less convincing. In June 2005, Parker considered purchasing the property and discussed prices but never made an offer or put anything in writing. No evidence existed of a binding commitment; as such, Parker was not a ready, willing, and able buyer, and this was not a bona fide contract.
 

 In sum, because the property increased in market value during the lis pendens period, SFSC did not suffer any damages based on the fair market value attributable to the lis pendens. Further, because SFSC did not establish that it had a bona fide contract with a ready, willing, and able buyer, it failed to prove it was entitled to any consequential damages which were the result of the lis pendens. Accordingly, we reverse the trial court’s final order granting SFSC’s Supplemental Motion To Recover Against Plaintiffs Lis Pendens Bond And For Additional Damages and Order Awarding Attorney’s Fees.
 

 Reversed.
 

 GERBER and LEVINE, JJ., concur.