971 So.2d 127 (2007)
Marilyn TAYLOR and Robert Taylor, Appellants,
v.
Steven RICHARDS and Donna Richards, Appellees.
No. 4D06-1173.
District Court of Appeal of Florida, Fourth District.
June 20, 2007.
*128 Michael T. Calvit, Vero Beach, for appellants.
Ira C. Hatch of Hatch & Doty, P.A., Vero Beach, for appellees.

ON MOTION FOR REHEARING
POLEN, J.
We grant in part appellees' motion for rehearing and substitute the following for our slip opinion of February 28, 2007.
Appellants Robert and Marilyn Taylor ("the Taylors") appeal a final judgment for appellees Stephen and Donna Richards ("the Richards"), wherein the trial court granted the Richards' claim for specific performance, requiring the Taylors to convey certain real estate. We reverse and remand with instructions to enter judgment in favor of the Taylors on the Richards' specific performance claim, and we direct the lower court to conduct further hearings on the issue of damages.
The Richards, as purchasers, entered into a written real estate contract with the Taylors for the sale and purchase of a condominium unit in Vero Beach, Florida. Just before closing, two hurricanes struck the area, causing damage to the condominium. The Richards then notified the Taylors that their lender, Bank of America, would not allow closing until all of the hurricane damage had been repaired. The Taylors advised that Bank of America could inspect the damage to the condominium, offered 3% of the assessed value of the property pursuant to Standard O of the contract,[1] and rescheduled the closing for October 22, 2004.
On October 15, 2004, Donna Richards and Bank of America's representative inspected the damage to the condominium. They observed that the Florida room roof and awning had been torn off and the windows had blown out. They were also made aware of a problem with the air *129 conditioner. Later that day, the Richards notified the Taylors by letter that they intended to settle and close on the property, but that they first needed information[2] to determine how to exercise their rights under Standard O of the contract. However, the Taylors never supplied the Richards with the requested information.
Even before they inspected the property damage, the Richards, concerned that the repairs might not be timely completed as required by Bank of America, made alternative arrangements for financing the purchase of the condominium. They contacted a long-time friend, Ken Becker ("Becker"), and requested a mortgage loan from him so that they would have sufficient funds to close on the purchase of the condominium. Having the financial wherewithal, Becker agreed to provide the Richards with the requested loan. The Richards' concerns about their financing from Bank of America proved justified. On October 20, 2004, Bank of America issued them a letter stating that it would not go forward with the loan due to the hurricane damage to the condominium that had not been repaired.
On October 22, 2004, the Taylors unilaterally cancelled the real estate contract and directed the escrow agent to return all of the Richards' deposits. The Richards proceeded to file a complaint against the Taylors seeking specific performance of the contract, as well as damages. At the conclusion of a bench trial, the trial court found the Richards ready, willing and able to purchase the condominium, and determined that the Taylors failed to comply with Standard O of the contract. Based on those findings, the court concluded that the Richards were entitled to specific performance. The Taylors filed a notice of appeal of the final judgment, and the trial court entered a subsequent order staying effect of its judgment until the conclusion of this appeal.
On appeal, the Taylors argue that the trial court erred in finding the Richards ready, willing and able to pay the contract sum, and thus reversibly erred in granting the Richards specific performance of the contract. We agree. "When a cause is tried without a jury, the trial judge's findings of fact are clothed with a presumption of correctness on appeal, and these findings will not be disturbed unless the appellant can demonstrate that they are clearly erroneous." Universal Bevs. Holdings, Inc. v. Merkin, 902 So.2d 288, 290 (Fla. 3d DCA 2005) (citations omitted). "[I]n order for a purchaser to obtain specific performance of a real estate sales contract, they must allege and prove that the vendee has either paid the balance, tendered the balance, [or] was ready, willing, and able to pay such balance or has been excused from such performance." Leverette v. Cochran, 876 So.2d 2, 3 (Fla. 4th DCA 2004). To prove that a prospective purchaser of property is ready, willing and able to buy, the purchaser must show that he is able to command the necessary money to close the deal on reasonable notice or within the time stipulated by the parties. Perper v. Edell, 160 Fla. 477, 485, 35 So.2d 387 (1948); see also Sticht v. Shull, 543 So.2d 395, 396 (Fla. 4th DCA 1989) (citations omitted) (stating that specific performance may be required of a seller of real property only where a prospective purchaser can command the requisite resources to close upon the terms and within the time stated by the seller); Hollywood Mall, Inc. v. Capozzi, 545 So.2d 918 (Fla. 4th DCA 1989) (stating that it is *130 the plaintiffs' burden of proof to show they are ready, willing and able to perform the contract in order to establish a prima facie case for specific performance) (citing Glave v. Brandlein, 196 So.2d 780 (Fla. 4th DCA 1967)).
In Capozzi, this court applied the following test for determining whether a purchaser is ready, willing and able to buy:
Generally speaking, a purchaser is financially ready and able to buy: (1) If he has the needed cash in hand, or (2) if he is personally possessed of assets  which in part may consist of the property to be purchased  and a credit rating which enable him with reasonable certainty to command the requisite funds at the required time, [citations omitted] or (3) if he has definitely arranged to raise the necessary money  or as much thereof as he is unable to supply personally  by obtaining a binding commitment for a loan to him for that purpose by a financially able third party, irrespective of whether such loan be secured in part by the property to be purchased.
Although no precise line of demarcation between the application of the second and third divisions of the above rule can be laid down for all cases, it is clear-in the light of the purpose of the rule-that where the purchaser relies primarily, not upon his own personal assets, but upon the proceeds of a contemplated loan or loans to be made to him by a third party, he is financially able to buy only if he has a definite and binding commitment from such third-party loaner. Even though the third party is financially able, his promise is of no avail unless made for an adequate consideration. A purchaser who personally has little, if any, cash or other assets must establish that the financial crutches to be loaned him by others are both legally and financially dependable.
Capozzi, 545 So.2d at 920-21 (quoting Shell Oil Co. v. Kapler, 235 Minn. 292, 50 N.W.2d 707 (1951)). The Richards contend that they satisfied the third prong (third party lender), as they requested a mortgage loan from Becker, Becker agreed to provide them with the loan, and Becker had the financial ability to do so. However, there is no record evidence that they obtained a binding commitment from Becker, i.e., that Becker made anything but a gratuitous promise, as there is no proof of consideration or other indications of a legally binding commitment. See id. at 920 (stating that a buyer "cannot be considered to be ready, willing and able to perform when its only ability is derived from funds not within its control and subject to the gratuitous payment by another"); see also Sticht, 543 So.2d at 397 (finding that purchaser failed to demonstrate ability to command the funds necessary to make purchase where his alleged business partner, who was to provide necessary financing for the purchase, was not legally obligated to perform under the contract). Therefore, although Becker testified that he was a long-time friend of the Richards and told the Richards that he would be capable and willing to lend them the money to close on the condominium, we find that the trial court erred in granting the Richards specific performance based on their alleged ability to obtain financing from him.
The Richards also suggest that they satisfied the second prong of the Capozzi test (personal possession of assets) by presenting evidence of their ability to obtain the necessary funds through a home equity line of credit on another property. Donna Richards testified that she and her husband could have obtained a home equity loan on another property sufficient to support the purchase of the condominium, but chose not to, opting instead to rely on *131 a promise from Becker. However, even considering the financial ability of the Richards to close this transaction, such ability is not sufficiently present in the record.
A purchaser may provide sufficient evidence that he is ready, willing and able to perform a contract when he provides proof that "he was personally possessed of assets and a credit rating which would enable him with reasonable certainty to command the requisite funds to close." Capozzi, 545 So.2d at 920. Evidence of the financial responsibility and business standing of a proposed purchaser is also admissible to prove financial ability, Perper, 160 Fla. at 485, 35 So.2d 387, as is a showing that the purchaser is "a person of substance." Mogul v. McClaskey, 309 So.2d 254, 256 (Fla. 4th DCA 1975) (quoting Sharp v. Long, 283 So.2d 567 (Fla. 4th DCA 1973)). In the instant case, there is no evidence in the record, such as proof of ownership of the other property, which would support Donna Richards' claim, nor is there evidence of the Richards' credit rating, financial responsibility, business standing or reputation for substance.
In Capozzi, this court said that even though it was reluctant to reverse a judgment of a trial court on an issue of fact, it was its duty to do so when there was no evidence in the record which would support that judgment. Capozzi, 545 So.2d at 921. In the case sub judice, there is testimony that the Richards were financially able to buy the condominium, e.g., Donna Richards' testimony regarding an available home equity line of credit sufficient to enable the purchase of the condominium. Nevertheless, there is no evidence to support this testimony. Likewise, there is evidence that the Richards obtained a promise from a non-institutional third party lender, Becker, to obtain the necessary funds, yet there is no showing that the promise constituted a legally binding commitment on Becker's part. Based on the insufficiency of this evidence, we conclude the trial court erred in concluding that the Richards were ready, willing and able to perform their financial obligations under the contract.
Based on the foregoing, we reverse and remand with instructions to the trial court to enter judgment in favor of the Taylors on the Richards' specific performance claim. As to all other issues raised on appeal, we affirm. We also instruct the trial court to conduct further hearings on the issue of damages. Lastly, we note that this decision may be limited by the peculiar circumstances of this casetwo hurricanes that hit the area in September 2004, causing significant property damage throughout the area and complicating real estate transactions.
Reversed and Remanded with Directions.
GUNTHER and HAZOURI, JJ., concur.
NOTES
[1] Standard ORisk of Lossis the operative provision in the contract for the options available to the parties as a result of hurricane damage to the condominium. It states as follows:

If the property is damaged by fire or other casualty before closing and costs of restoration does not exceed 3% of the assessed valuation of the property so damaged, cost of restoration shall be an obligation of seller and closing shall proceed pursuant to the terms of this contract with restoration costs escrowed at closing. If the cost of restoration exceeds 3% of the assessed valuation of the property so damaged, buyer shall either take the property as is, together with either the 3% or any insurance proceeds payable by virtue of such loss or damage, or receive a refund of deposit(s), thereby releasing buyer and seller from all further obligations under this contract. (Emphasis added).
[2] The requested information included repair estimates establishing the extent of damage to the condominium and the amount of insurance proceeds payable or that had been paid by virtue of the loss or damage sustained to the condominium.