972 So.2d 1076 (2008)
Judith LUSIGNAN, Appellant,
v.
Nichole O. LUSIGNAN, et al., Appellee.
No. 5D07-279.
District Court of Appeal of Florida, Fifth District.
January 25, 2008.
*1077 Walter E. Foster III, of Walter E. Foster III, P.A., Daytona Beach, for Appellant.
Stephen R. Ponder of Van Houten, Ponder & Hahl, P.A., Daytona Beach, for Appellee.
PLEUS, J.
Judith Lusignan appeals a final decree of specific performance in favor of Nichole Lusignan on a contract for sale of a house. Judith is Nichole's step-mother.
After the house was damaged in the 2004 hurricanes, Judith agreed to sell it to Nichole for $100,000 with a closing, set for November 1, 2004. Nichole gave Judith a $5,000 deposit.
Judith left Florida on October 27, 2004, and the closing did not occur as scheduled. Nichole claimed she was unable to contact Judith and thus was unable to close. Judith denied leaving the State to avoid the closing and claimed she could have easily been contacted by telephone.
Upon her return to Florida, Judith made substantial repairs to the property. When Nichole sought to close on the property, Judith brought a quiet title action. Nichole counterclaimed for specific performance and breach of contract.
Following a non jury trial, the court found that Nichole was ready, willing and able to perform the contract but was unable to contact Judith, thereby making timely closing an impossibility. The court ordered specific performance and denied Judith's demand to quiet title in her favor.
The issue in this appeal is whether, as the trial court concluded, Nichole was ready, willing and able to close. Because we conclude the trial court misunderstood "ready, willing and able," we reverse.
Nichole testified she was ready, willing and able to close on November 1, 2004. Her explanation of ability was that Robert Potchen, who was married to Nichole's friend, Alice Potchen, and who is wealthy, agreed to loan her $100,000. On cross, Robert admitted he was not a mortgage lender and said he "simply was going to write a check and let my wife take care of the rest."
Judith argues that the evidence presented by Nichole was legally insufficient to establish that Nichole satisfied the financing contingency and was ready, willing and able to close pursuant to the terms of the contract.
"In order for a purchaser to obtain specific performance of a real estate contract, [the purchaser] must allege and prove that [it] has either paid the balance, tendered the balance [or] was ready, willing and able to pay such balance or has been excused from such performance." Taylor v. Richards, 971 So.2d 127 (Fla. 4th DCA 2007), rev. denied, 2007 WL 4260019 (Fla. Dec. 3, 2007), quoting Leverette v. Cochran, 876 So.2d 2, 3 (Fla. 4th DCA 2004). To prove that a prospective purchaser of property is ready, willing and able to buy, the purchaser must show that he is able to command the necessary money to close the deal on reasonable notice or within the time stipulated by the parties. Taylor, citing Perper v. Edell, 160 Fla. 477, 485, 35 So.2d 387 (1948), and Glave v. Brandlein, 196 So.2d 780 (Fla. 4th DCA 1967).
The Fourth District, in a series of decisions, has applied the following test for determining whether a purchaser is ready, willing and able to buy:
Generally speaking, a purchaser is financially ready and able to buy: (1) if he has the needed cash in hand, or (2) if he is personally possessed of assetswhich in part may consist of the property to be purchasedand a credit rating which enable him with reasonable certainty to command the requisite funds at the required time, [citations omitted] or (3) if *1078 he has definitely arranged to raise the necessary moneyor as much thereof as he is unable to supply personallyby obtaining a binding commitment for a loan to him for that purpose by a financially able third party, irrespective of whether such loan be secured in part by the property to be purchased.
Although no precise line of demarcation between the application of the second and third divisions of the above rule can be laid down for all cases, it is clearin the light of the purpose of the rulethat where the purchaser relies primarily, not upon his own personal assets, but upon the proceeds of a contemplated loan or loans to be made to him by a third party, he is financially able to buy only if he has a definite and binding commitment from such third-party loaner. Even though the third party is financially able, his promise is of no avail unless made for an adequate consideration. A purchaser who personally has little, if any, cash or other assets must establish that the financial crutches to be loaned him by others are both legally and financially dependable.
Taylor, quoting from Hollywood. Mall, Inc. v. Capozzi, 545 So.2d 918, 920-21 (Fla. 4th DCA 1989) (emphasis supplied).
In Taylor, a gratuitous promise was made by a longtime friend of the purchaser, without consideration or other indications of a legally binding commitment, that the friend was capable and willing to lend the buyer the money to close. This was deemed insufficient to establish the purchaser's ability to close or to support an award of specific performance. The appellate court noted that no record evidence existed that the purchasers obtained a binding commitment from the friend, Becker, i.e., that Becker made anything but a gratuitous promise. The Taylor court relied on Capozzi (buyer "cannot be considered to be ready, willing and able to perform when its only ability is derived from funds not within its control and subject to the gratuitous payment by another") and Stick v. Shull, 543 So.2d 395, 397 (Fla. 4th DCA 1989) (purchaser failed to demonstrate ability to command funds necessary to make purchase where his alleged business partner, who was to provide necessary financing for the purchase, was not legally obligated to perform under the contract).
Nichole is correct that competent, substantial evidence was presented that a valid contract existed between the parties, that she sought and obtained a promise of financing from a third party lender, Robert Potchen, prior to the date set for closing, that she so notified Judith, and that Judith left the area just prior to the date set for closing. However, the evidence as to Nichole's ability to obtain financing from Robert was insufficient to establish her entitlement to specific performance. Robert agreed as a friend to provide Nichole with a loan, claimed he had the financial ability to do so, and even provided written confirmation. However, no evidence was presented of Robert's financial standing, that Nichole had a binding commitment from Robert, or that the promise was anything other than a gratuitous promise. Even if, as Nichole testified, Robert is a "wealthy man," no proof was presented of consideration or other indications which would support a legally binding commitment. The burden was on Nichole to establish this and she failed to do so. Specific performance was erroneously decreed under these circumstances.
Nichole claims that alternatively she was entitled to damages for breach of contract based on the loss of the benefit of her bargain, i.e., the difference between the contract price and the current fair market value of Lot 3. However, if Nichole could not be considered ready, willing and able to perform based on the gratuitous *1079 promise of her friend Robert, to loan her $100,000, the breach of contract claim would likewise fail. See Capozzi. Under such circumstances, the trial court, on remand, should quiet title to the subject property in favor of Judith.
With regard to attorney's fees, each party has moved for an award of appellate attorney's fees based on a prevailing party provision contained in the contract for sale and purchase. Section 59.46, Florida Statutes, extends the entitlement to fees to those incurred on appeal. Accordingly, we grant Judith's motion for attorney's fees and deny Nichole's.
REVERSED and REMANDED.
MONACO and EVANDER, JJ., concur.