A. L. PERPER v. JOSEPH EDELL and FRIEDA EDELL, his wife, and HARRY GROSSINGER and JENNIE GROSSINGER, his wife.

35 So. (2nd) 387                                         January Term, 1948
May 14, 1948                                                    Division A

478

*Thomas J. Ellis, J. Kenneth Ballinger, Harold Turk* and *Turk & Newman,* for appellant.

*Williams, Salomon & Katz,* for appellees.

CHAPMAN, J.:

The appellant, A. L. Perper, filed a common law action in the Circuit Court of Dade County, Florida, against Joseph Edell and wife, Frieda Edell, and Harry Grossinger and wife, Jennie Grossinger, for the purpose of collecting a realtor's commission in the sum of $25,000 for obtaining a purchaser of the Grossinger Hotel then ready, able and willing to purchase for the sum of $725,000 net to the defendant owners, pursuant to a listing thereof given to the plaintiff by the defendants.

The amended declaration alleged that the plaintiff was a licensed real estate broker and on or about March 3, 1945, found for the defendants bona fide purchasers viz: Max Feinstein and two associates who were ready, willing and able to purchase from the defendants the Grossinger Hotel, situated in Miami Beach, fully furnished and equipped, for the sum of $725,000 net to the defendants and pay the plaintiff a commission of $25,000, over and above the sum of $725,000 . . . the purchasers were obtained pursuant to a listing of the hotel property previously given the plaintiff by the defendants. The defendants refused or declined to make the sale and thereby deprived the plaintiff of his commission in the sum of $25,000.

The defendants pleaded (1) never was indebted as alleged; (2) not guilty; (3) denied the plaintiff was a licensed broker; (4) denied plaintiff found bona fide purchasers able, ready and willing to purchase the property; (5) denied the listing of the property; (6) denied depriving the plaintiff of a commission of $25,000; (7) the defendants at the trial relied upon the contention that Joseph Edell was temporarily insane when he gave a listing to the plaintiff for the sale of the Grossinger Hotel. The record discloses that—after the jury had heard all the evidence of the parties, argument of counsel and instructions of the court upon the law of the case and retired to consider their verdict—the following occurred: "Mr. DeJarnette: Comes now the defendant and amends plea No. 5 by adding the following: 'for that at the time of the alleged listing on February 18, 1945, and of the alleged offer on March 3, 1945, Joseph Edell, who is alleged to have given the listing and received the offer, was insane and incapable of making the contract, and was for several weeks prior to February 18th, 1945, and several weeks subsequent to March 3, 1945, insane and incapable of making the contract and of receiving the offer.' "

Pertinent instructions given to the jury by the trial court are viz:

"If the jury finds that Mr. Edell was authorized by his wife and his partners, the Grossingers, to list the Grossinger Hotel with real estate brokers, and that Mr. Edell did authorize the

plaintiff, Mr. Perper, a real estate broker, to find a purchaser at $760,000.00 gross, all cash above a $300,000.00 first mortgage, or at $725,000.00 net, all cash above a $300,000.00 first mortgage, and that on either of those propositions, the sellers would, for the convenience of the purchasers, arrange for a second mortgage of $125,000.00, and that Mr. Perper did find purchasers who were ready, willing and able to purchase at $725,000.00, all cash above a $300,000.00 first mortgage, and that said purchasers agreed to pay Mr. Perper a commission of $25,000.00 on consummation of the sale, and that Mr. Perper did so advise Mr. Edell, but Mr. Edell refused to go through with the deal, then the jury should return a verdict for the plaintiff, in the sum of $25,000.00, *if Mr. Edell was competent to contract with the plaintiff*. (The underscored words were added to the above charge by the Court and were not a part of the charge as requested by counsel for plaintiff.)

"The Court (continuing) : The defendant has requested certain charges, which will be given, as follows:

"I charge you, gentlemen of the jury, that there are two types of real estate listings. One is a listing to procure a purchaser and another is a listing to effect a sale.

"If you find from the testimony in this case that this was a listing to effect a sale, then I charge you that the broker, in order to receive a commission, must not only have produced a purchaser ready, willing, and able to buy, but also must have procured from his customer a written contract which the seller could enforce, leaving nothing for the seller to do but to execute, at the proper time, the necessary transfer of the title to the property. Therefore, if you find in this case that the listing was to effect a sale rather than to procure a purchaser, then I charge you that it was Mr. Perper's duty to have delivered to the defendants a written binding contract signed by the proposed purchasers and containing the exact terms of the listing.

"I charge you further that even if you believe from the evidence that Mr. Edell had the sole and full authority to negotiate for the sale of this hotel, if you further believe from the evidence that on the date of the alleged listing and on the date of the alleged tender of performance, that is to say, on

the 18th of February, 1945, and the 3rd of March, 1945, that Mr. Edell was *mentally incapable* of entering into a contract, then under such circumstances the plaintiff is not entitled to recover and your verdict must be for the defendants."

A motion for new trial was made on several grounds, including the sufficiency of the evidence to sustain the verdict for the defendants below; the insanity issue presented by a special plea at the conclusion of defendants' case; charges of the court upon the law of the case; the refusal to admit testimony as to the financial ability of plaintiff's prospective purchasers; the order of the trial court in denying plaintiff's motion for a directed verdict, etc. The trial court denied the motion for a new trial and entered a judgment for the defendants on the verdict of the jury and plaintiff appealed.

The record discloses that counsel for defendants at the close of the plaintiff's testimony, moved the court for a directed verdict on grounds (1) the evidence adduced by the plaintiff was legally insufficient; (2) that the alleged listing of the hotel was for the sale thereof and not for procuring a purchaser ready, willing and able to perform; (3) the defendants were sued as individuals and the testimony adduced established a partnership; (4) there was no showing that the purchasers were ready, willing and able to perform the contract of purchase. The trial court properly denied defendants' motion for a directed verdict. The evidence adduced by the defendants below went almost exclusively to the sole question of the insanity of Joseph Edell prior and subsequent to the date of the alleged listing of the property with the plaintiff, as shown by the testimony of Dr. Kushner and Dr. Anderson. The defendants did not take the witness stand nor any one in their behalf, other than the two physicians.

The adjudications of this Court are to the effect that, where a broker procures a customer willing, ready and able to purchase property offered for sale according to the terms of the offer and the transaction is defeated on account of some fault of the principal, the broker is entitled to his commission, although the transaction is not consummated. Hutchins & Co. v. Sherman, 82 Fla. 167, 89 So. 430; Camp Lumber Co.

v. Tedder, 78 Fla. 183, 82 So. 865; Walker v. Chancey, 96 Fla. 82, 117 So. 705. The trial court in denying defendants' motion for a directed verdict made at the close of plaintiff's case held that the plaintiff by competent evidence had established prima facie the material allegations of his amended declaration.

The sanity or insanity of Mr. Edell on February 18, 1945, and March 3, 1945, unquestionably, was the controlling issue before the jury under the following charge: "If you believe from the evidence that Mr. Edell had the sole and full authority to negotiate for the sale of this hotel, if you believe from the evidence that on the date of the alleged listing and on the date of the alleged tender of performance, that is say on the 18th of February and the 3rd of March, 1945, that Mr. Edell was *mentally incapable* of entering into a contract, then under such circumstances the plaintiff is not entitled to recover and your verdict must be for the defendants."

In the case of Sheppard v. Cherry, 118 Fla. 473, 159 So. 661, we held that complete insanity of one of the parties to a contract is not sufficient reason for setting it aside where it was entered into in good faith, without fraud or imposition, for a fair consideration, without notice of the infirmity and before an adjudication of insanity, and has been executed in whole or in part, unless the parties can be restored to their original position.

In Farrior v. Hughes-Law Lumber Co., 113 Fla. 209, 151 So. 377, we in part said:

" 'According to the weight of authority, however, where there has been no inquisition or adjudication of insanity, a contract entered into upon an adequate consideration of which the insane person has had the benefit, and made by the other contracting party in good faith, without fraud or undue influence, and without knowledge of the insanity or reason to suspect it, will be upheld against the insane person or his representatives, and it cannot be avoided by them, where the parties cannot be put *in status quo*. The liability under the contract in such a case will be upheld, not so much upon the theory of enforcing the promise as upon the idea that the in-

sane person ought not to enjoy the full, adequate and irrestorable benefit of a contract ordinarily merely voidable, without himself complying with the terms thereof; and such liability is imposed also on the principle that, where a loss must be borne by one of two innocent persons it shall be borne by him who occasioned it.' "

See Douglas v. Ogle, 80 Fla. 42, 85 So. 243; Hassey v. Williams, 127 Fla. 734, 174 So. 9; Sommers v. Apalachicola Northern R.R. Co., 85 Fla. 9, 96 So. 151; Gabel v. Simmons, 100 Fla. 526, 129 So. 777.

The contracts of an insane person not under guardianship that are voidable in character may be ratified or rescinded. They may be ratified by the insane party in a lucid interval or upon recovering mental capacity. It is not necessary that the ratification be made by expressed words; it may be evidenced by any intelligent act or conduct of the party, made with a full knowledge of the facts, which clearly shows an intention to be bound by the contract. If the insane person knowingly accepts the benefits of the agreement he may be held to have ratified it. Retaining the property received under the contract after one has recovered his mind may amount to a ratification. It is the act of disaffirmance which destroys voidable contracts or deeds. Elliott on Contracts, Vol. 1, pp. 590-1, par. 381.

Elliott on Contracts, Vol. 1, pp. 594-8, treats the questions thusly:

"Sec. 384.   Restoration of Consideration.—As a general rule the contract of a person of unsound mind that is fair and beneficial to him and made in good faith without knowledge of his mental infirmity cannot be avoided unless the other party is placed in statu quo.   Under such circumstances if the insane person does not offer to, or cannot place the other party in his former position the contract is binding.   The reason given for this rule is that, 'if a merely voidable contract can be repudiated by one of the parties, even though he be a lunatic, and a recovery can be defeated in the face of these circumstances simply because the party who made the purchase was of unsound mind, though not at the time adjudged to be so, the loss would fall upon a confessedly innocent person, instead

of on the one who received and used the article delivered in good faith under the contract.' A lunatic who causes the loss must be made to bear the consequences of his infirmity as he must bear his misfortune.

"Sec. 385. Illustrations of the Rule.—Thus an insane grantor not under guardianship and not known to be non compos mentis cannot avoid his deed without offering to restore the consideration received therefor, or in case he purchases land and gives a note and mortgage in payment therefor he cannot retain the land and avoid his note and mortgage. Contracts concerning personal property are controlled by the same principles. The compromise of an insane person before he has been adjudged non compos mentis can only be avoided by placing the other party in statu quo. Thus it has been held that where an employe while mentally incompetent signed a release of liability for personal injuries and subsequently recovered judgment in an action for the injury, the amount received under the release should be deducted from the judgment. If the insane person did not derive any benefit or receive any part of the consideration, he may rescind without making restitution or placing the other party in statu quo. Thus where the consideration is given a third person there need be no restitution made by the insane party. The same is true where he executes a negotiable instrument as surety or becomes an accommodation indorser.

"Sec. 386. Restoration as a Condition Precedent.—If the agreement is harsh or oppressive, or is detrimental to the interest of the insane party, it may be disaffirmed in a proper case without placing the party in statu quo. Should one party know or have reasonable cause to believe the other to be insane the person non compos mentis may rescind without being required to make restitution. One dealing with a person known to be insane is not entitled to be placed in statu quo as a condition precedent to an avoidance of the agreement. This does not mean, however, that there need be no restitution in any case; it merely means that restitution is not a condition precedent. So much of the consideration as remains in the hands of the insane party must be restored by him upon rescission."

Ernest Mayer Briel, an agent or representative of Dunn & Bradstreet, a commercial rating agency, was produced by the plaintiff and interrogated as to the financial ability of a Mr. David Fox, of Philadelphia, one of the purchasers produced by the plaintiff. The witness, as a representative of Dunn & Bradstreet located in Miami, obtained through their Philadelphia office information as to the financial ability of Mr. Fox. The trial court sustained an objection to the testimony on the ground that it was hearsay. A broker producing a purchaser financially able is not required to show that the purchaser is then standing outside of the office door with all the cash in hand required to pay for the property. If the purchaser is financially able to pay for the property within the time stipulated it is sufficient. (Financially) "able" means that the proposed purchaser is able to command the necessary money to close the deal on reasonable notice or within the time stipulated by the parties. McCabe v. Jones, 141 Wis. 540, 124 N.W. 486. Evidence based on the financial responsibility and business standing of a proposed purchaser is admissible.

It is our conclusion that the trial court erred in its instructions to the jury on the law of the case. The defendants below should be permitted or allowed to submit to the trial court, and obtain a ruling thereon as to its legal sufficiency, a plea in lieu of their amended plea No. 5, which is hereby stricken because of its legal insufficiency. The judgment is reversed and a new trial awarded.

THOMAS, C. J., TERRELL and CHAPMAN, JJ., concur.