545 So.2d 918 (1989)
HOLLYWOOD MALL, INC., a Florida Corporation, Theodore R. Stotzer, Bernard Budd, William D. Horvitz and James O. Lewis, Jointly and Severally, Appellants,
v.
John V. CAPOZZI and Gibraltar Development, Inc., a Florida Corporation, Appellees.
Nos. 87-2553, 88-1079.
District Court of Appeal of Florida, Fourth District.
May 10, 1989.
Rehearing Denied July 21, 1989.
*919 William S. Spencer of Ellis, Spencer, Butler & Kisslan, Hollywood, and Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., Fort Lauderdale, for appellant-Hollywood Mall, Inc.
Linda R. Spaulding, Michael J. McNerney and Harris Solomon of Brinkley, McNerney, Morgan & Solomon, Fort Lauderdale, for appellees-John V. Capozzi and Gibraltar Development, Inc.
WARNER, Judge.
This is an appeal from a final judgment granting specific performance of a real estate contract. The seller appeals claiming that (1) there was no valid, enforceable contract which could be enforced by specific performance, and (2) that even if there were a binding contract, the purchaser failed to prove that it was ready, willing, and able to perform its obligations under the contract. Thus the trial court erred in granting specific performance.
We find no error as to the first point on appeal. There was substantial, competent evidence to support the trial court's finding that there was a binding contract which had been accepted by the seller and whose acceptance was communicated to the purchaser. Kendel v. Pontious, 261 So.2d 167 (Fla. 1972); Gateway Cable T.V., Inc. v. Vikoa Construction Corp., 253 So.2d 461 (Fla. 1st DCA 1971).
However, with respect to the second point, we find that the trial court erred in granting specific performance where there was no evidence that the purchaser was ready, willing and able to perform the contract. The letter of intent agreed to by John Capozzi or assigns as purchaser was formalized into a contract between Hollywood Mall, Inc., as seller, and Gibralter Development Corporation as purchaser. Gibralter was a corporation which was activated by Capozzi solely for the purchase of this property and whose stock was owned by Capozzi's children. At the organizational meeting of its board of directors of which Capozzi was chairman, the minutes reflect that the corporation did not have the funds yet available to pay the deposit for the proposed purchase, the deposit being $15,000, but that Capozzi would loan that amount to the corporation. Further, *920 Capozzi would agree to furnish such additional funds which may be required to meet expenses prior to the closing of the real estate transaction. There is nothing else to indicate how the corporation would secure the funds to close on this $1,850,000 contract.
Appellee responds to this lack of proof of Gibralter's ability to perform the contract by claiming that Capozzi would have produced the funds to close this cash transaction. Clearly, the trial court looked at Capozzi's ability to close the transaction because it found that "Plaintiff presented a prima facie case of [ready, willing and able buyer] by reference to plaintiff's [Capozzi's] other completed projects in Broward... ." However, Mr. Capozzi was under no obligation to provide the funds to the corporation to close the transaction, and Gibralter cannot be considered to be ready, willing and able to perform when its only ability is derived from funds not within its control and subject to the gratuitous payment by another. See Winkelman v. Allen, 214 Kan. 22, 519 P.2d 1377, 1385 (Kan. 1974); Potter v. Ridge Realty Corporation, 28 Conn.Sup. 304, 259 A.2d 758 (1969). However, even if we do consider the financial ability of Mr. Capozzi to close this transaction, such ability is nowhere present in this record. And it is the burden of proof of the plaintiff to show it is ready, willing and able to perform the contract to establish a prima facie case for specific performance. Glave v. Brandlein, 196 So.2d 780 (Fla. 4th DCA 1967).
What must the purchaser show to prove that he was "ready, willing, and able" to perform the contract? In Perper v. Edell, 160 Fla. 477, 35 So.2d 387 (1948) the Supreme Court stated that "(Financially) `able' means that the proposed purchaser is able to command the necessary money to close the deal on reasonable notice or within the time stipulated by the parties." Although Perper was a suit to collect a broker's commission, a necessary element of proof was that the broker had to produce a purchaser ready, willing and able to perform. Thus, it is analogous to the instant situation. In Perper, the court held that evidence based on the financial responsibility and business standing of a proposed purchaser would be admissible to prove financial ability.
In Shell Oil Co. v. Kapler, 235 Minn. 292, 50 N.W.2d 707, 712 (1951), the Supreme Court of Minnesota stated in a case for specific performance:
Rules for testing a purchaser's financial ability to buy are not to be reduced to any unyielding formula, but must be flexible enough to accomplish their purpose according to the particular facts of each case. In ascertaining the rules reflected by an endless variety of cases, it is particularly important to bear in mind that no decision is authoritative beyond the scope of its controlling facts. Difficulty in both stating and applying the rules stems principally from a failure to keep in mind that their purpose-the protection of good faith sellers as well as of bona fide purchasers, sellers, brokers, and other persons similarly situated  is to establish a purchaser's financial ability to buy with reasonable certainty. A purchaser may not have the necessary cash in hand, but that alone, it is recognized, does not disqualify him if he is otherwise so situated that he is reasonably able to command the requisite cash at the required time. On the other hand, the seller is not required to part with his property to a purchaser whose financial ability rests upon nothing more than shoestring speculation or upon attractive probabilities which fall short of reasonable certainty of the purchaser's financial ability to pay and, on the other hand, to protect the purchaser  and persons similarly situated  from a technical, insubstantial, or sharp-dealing disqualification.
Generally speaking, a purchaser is financially ready and able to buy: (1) If he has the needed cash in hand, or (2) if he is personally possessed of assets  which in part may consist of the property to be purchased  and a credit rating which enable him with reasonable certainty to command the requisite funds at the required time, [citations omitted] or (3) if he has definitely arranged to raise the *921 necessary money  or as much thereof as he is unable to supply personally  by obtaining a binding commitment for a loan to him for that purpose by a financially able third party, irrespective of whether such loan be secured in part by the property to be purchased. Although no precise line of demarcation between the application of the second and third divisions of the above rule can be laid down for all cases, it is clear-in the light of the purpose of the rule  that where the purchaser relies primarily, not upon his own personal assets, but upon the proceeds of a contemplated loan or loans to be made to him by a third party, he is financially able to buy only if he has a definite and binding commitment from such third-party loaner. Even though the third party is financially able, his promise is of no avail unless made for an adequate consideration. A purchaser who personally has little, if any, cash or other assets must establish that the financial crutches to be loaned him by others are both legally and financially dependable.
See also Winkelman v. Allen, 214 Kan. 22, 519 P.2d 1377 (1974).
Applying those rules to the facts of this case, it is clear that appellee offered no evidence which would show that Mr. Capozzi had the financial ability to close this transaction on behalf of Gibraltar. Mr. Capozzi was the sole shareholder of a savings and loan association in St. Louis which at the time of this transaction, had been taken over by the Federal regulatory agency, and Mr. Capozzi was excluded from its operations. The record reveals that over a seven year period of time, he built several large real estate projects in Broward County, but there is nothing in the record to indicate whether he owned those projects or even whether they were financially successful. It was also shown that Mr. Capozzi negotiated and closed a $10,000,000.00 real property sale with representatives of appellee at some time in the past, but again there is no evidence of whether Capozzi consummated the purchase himself or as a representative of his savings and loan or its subsidiary for real estate development over which Capozzi had no further control. There is also in the record evidence that Capozzi had an offer to purchase the same property for substantially more than the contract which is the subject matter of this suit, but that contract was never concluded. Thus, it cannot serve as evidence to show that Capozzi was ready, willing and able to close on the subject contract unless there was evidence presented that this subsequent purchaser was ready, willing and able to close on the contract.
That Mr. Capozzi closed deals in the past says nothing about his present ability. There was no proof that he had cash in hand or that he was personally possessed of assets and a credit rating which would enable him with reasonable certainty to command the requisite funds to close. While the property may have been more valuable than the purchase price, there was no evidence offered to show that he could obtain a loan for that amount. Although we are reluctant to reverse a judgment of a trial court on a fact issue, it is our duty to do so when there are no facts in the record which would support that judgment. Oceanic International Corp. v. Lantana Boatyard, 402 So.2d 507, 511 (Fla. 4th DCA 1981).
Although the trial court determined that by granting judgment for specific performance the claim for damages was moot, our reversal of the judgment for specific performance does not require a remand for the trial court to reconsider the issue of damages. To obtain damages for anticipatory breach of contract, the purchaser must also show that he was ready, willing, and able to perform the contract. Hospital Mortgage Group v. First Prudential Development Corporation, 411 So.2d 181 (Fla. 1982); Stanley v. Anthony Farms, 93 Fla. 295, 112 So. 57 (1927). We thus reverse and remand with directions to enter a judgment in favor of appellant.
Our consideration of the issues on the plenary appeal has also rendered moot the issues raised in the appeal of the post-judgment order denying appellant's motion *922 to vacate which was consolidated with the plenary appeal for disposition.
REVERSED AND REMANDED WITH DIRECTIONS TO ENTER FINAL JUDGMENT FOR APPELLANT.
DOWNEY and DELL, JJ., concur.