DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GLENDA MARTINEZ SMITH,**
Appellant,

v.

**J. ALAN SMITH,**
Appellee.

No. 4D14-1436

[March 2, 2016]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; David E. French, Judge; L.T. Case No. 502013DR002143.

Jennifer S. Carroll of Law Offices of Jennifer S. Carroll, P.A., Palm Beach Gardens, for appellant.

No brief filed for appellee.

DAMOORGIAN, J.

Glenda Martinez Smith appeals a final judgment annulling her marriage to J. Alan Smith (the "Ward"). We affirm.

The annulment challenge is an offshoot from a guardianship case in which the Ward was judicially declared incompetent. Within the order appointing the plenary guardian, the court removed the Ward's right to contract and, concomitantly, provided that the Ward's right to marry was "subject to court approval." Despite the court's restriction on the Ward's right to marry, Appellant and the Ward married without court approval. The Ward's independent counsel appointed in the guardianship case instituted a proceeding to annul the marriage. Ultimately, the court granted the requested relief and annulled the marriage. This appeal follows.

Appellant argues, among other things, that the final judgment annulling her marriage with the Ward must be vacated because prior court approval was not required by the court's order or the controlling statute.

Section 744.3215 of the Florida Statutes outlines the rights which a person determined incapacitated retains and those which may be removed. § 744.3215, Fla. Stat. (2013). With respect to marriage, subsection (2)(a) provides:

> (2) Rights that may be removed from a person by an order determining incapacity but not delegated to a guardian include the right:

> (a) To marry. If the right to enter into a contract has been removed, the right to marry is subject to court approval.

§ 744.3215(2)(a), Fla. Stat. (2013). The order appointing the plenary guardian mirrored section 744.3215(2)(a).

In construing section 744.3215(2)(a)'s limitations on a ward's right to marry, we must give the statute's language its plain and ordinary meaning and may not ignore words or, alternatively, add words not included by the Legislature. *See, e.g., Exposito v. State*, 891 So. 2d 525, 528 (Fla. 2004) (when construing a statute, the court may not add words not placed there by the Legislature); *State v. Goode,* 830 So. 2d 817, 824 (Fla. 2002) ("[A] basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless."). The statute does not state that "a marriage" is subject to court approval, but rather, it states that "**the right** to marry" is subject to court approval. Therefore, if a person deemed incapacitated has had his or her right to contract removed, he or she has no right to marry unless the court gives its approval.

A marriage entered into by a person with no right to marry is void. *See Kuehmsted v. Turnwall*, 138 So. 775, 777–78 (Fla. 1932) (marriage entered into by person lacking mental capacity to consent is void); *Dandy v. Dandy*, 234 So. 2d 728, 730 (Fla. 1st DCA 1970) (marriage between parties was void because one of the parties was still legally married to another and thus lacked the right to marry again). Thus, it follows that in order to enter into a valid marriage, an incapacitated person who has had his or her right to contract removed must first ask the court to approve his or her right to marry.

Based on the foregoing, the court's interpretation of section 744.3215(2)(a) was correct: at the time the Ward and Appellant married, the Ward had no right to marry as he had not obtained court approval.

Therefore, the trial court correctly determined that the marriage was void.[1]

*Affirmed.*

MAY, J., concurs specially with opinion.
WARNER, J., dissents with opinion.

MAY, J., concurring specially.

I concur with the majority opinion. I write only to add that even if section 744.3215(2)(a), Florida Statutes (2013), was read to allow court approval subsequent to the marriage, in essence ratifying a marriage after the fact, this case would still be an affirmance. Once the ward's attorney petitioned to annul the marriage, the wife moved to ratify approval of the marriage or to alternatively approve the marriage. The court denied the motion to ratify the marriage.

While I agree that the statute is prospective regarding approval of the right to marry once the ward's right to contract has been removed, ultimately the trial court is in the best position to determine whether the ward had the capacity to enter into the marriage. *See Griffin Indus., LLC v. Dixie Southland Corp.*, 162 So. 3d 1062, 1066–67 (Fla. 4th DCA 2015) (stating the trial court is in the best position to evaluate and weigh the testimony and evidence and make factual findings). Whether the statute is prospective or allows for ratification, the order should be affirmed.

WARNER, J., dissenting.

The right to marry is a fundamental right, protected by the United States Constitution. *See Obergefell v. Hodges*, 135 S.Ct. 2584, 2598 (2015):

> Choices about marriage shape an individual's destiny. As the Supreme Judicial Court of Massachusetts has explained,

---

[1]   As the marriage was void from the inception, Appellant's argument that the court "ratified" the marriage by acknowledging it at the December 18, 2012 hearing is without merit. A void marriage, in legal contemplation, has never existed and, therefore, cannot be ratified. *See, e.g., Arnelle v. Fisher,* 647 So. 2d 1047 (Fla. 5th DCA 1994) (discussing distinction between a void and voidable marriage). At any rate, this Court reversed the court's order stemming from the December 18, 2012 hearing and remanded for a new hearing. By virtue of our mandate, nothing the court did on December 18, 2012 has any binding legal effect.

3

because "it fulfils yearnings for security, safe haven, and connection that express our common humanity, civil marriage is an esteemed institution, and the decision whether and whom to marry is among life's momentous acts of self-definition."

*Id.* at 2599 (quoting *Goodridge v. Dep't of Pub. Health*, 798 N.E.2d 941, 955 (Mass. 2003)). Because the court did not remove the right to marry from the ward, he was not rendered incompetent as to his ability to marry. I would hold that the failure to obtain court approval prior to the marriage at most rendered the marriage voidable, not void, so that the court could approve the union post-marriage. As the sole ground alleged for invalidating the marriage was the failure to obtain court approval prior to the marriage, and there was no claim that the ward did not understand the marriage contract or that any financial exploitation occurred, I would hold that the marriage should have been ratified by the court. Further, I would hold that the attorney ad litem had no authority to bring this action, and the ward was denied fundamental due process because he did not have independent counsel in these proceedings. I would reverse.[2]

Appellant Glenda Martinez met appellee J. Alan Smith in 2008, while Smith was still married to his first wife. Martinez and Smith vacationed together and eventually moved in together. The couple became engaged in 2009. Smith wrote letters to Martinez declaring his love and affection. He also executed a designation of health care surrogate and living will declaration, designating Martinez as his health care surrogate, as well as giving her power of attorney. He commenced divorce proceedings against his first wife.

In January 2010, Smith was involved in an automobile accident in which he suffered head trauma. As a result, his daughter filed a petition to appoint a guardian of the person and property of Smith. After a hearing, the court denied appointment of a guardian of the person and appointed only a limited guardian of the property. After the hearing on incompetency, the court found that Smith had "lessening of some cognitive functions possibly due to dementia that make him incapacitated, the nature and scope being that he is unable to manage his property and to contract." The court also specifically found that "there is no incapacity on the part of J. Alan Smith that would warrant a guardian of a person." Thus, the only rights which the court removed from Smith were the right

---

[2] I note that neither the "attorney" for the ward nor the guardian has filed an answer brief in this case. I take that as the possibility of a concession to the validity of the issues raised in the appellant's brief.

to contract and to manage his finances, including his ability to make a gift or dispose of property. In the letters of guardianship, the court delegated to the limited guardian the right to contract with the following form note: "Note: if the right of the Ward to contract has been delegated to the Guardian but the right to marry is retained, then the right to marry is subject to Court approval." This was in compliance with section 744.3045(2)(a), Florida Statutes (2013).

Although Smith's son was first appointed limited guardian of his father, a conflict arose as to his place in the divorce proceedings with his mother. Therefore, a professional guardian, John Cramer, was appointed in his place. The divorce proceedings continued and were finalized. Smith was represented by his own counsel in these proceedings. In December 2011, Smith and Martinez were married. Martinez had called Cramer two times to request that the guardian ask the judge for approval, but Cramer refused. She did not, at the time, seek to have a lawyer pursue obtaining court approval.

Smith and Martinez lived together as husband and wife, and for a year after the marriage they resided in a rental house in Miami. Their neighbor testified at the annulment proceedings that Martinez was very caring and loving towards Smith. Smith's divorce attorney also testified to the same and noted that Martinez paid many of Smith's bills during the divorce proceedings.

Unfortunately, Smith's mental and physical state continued to deteriorate. By May or June of 2012, Smith could no longer verbally communicate. Eventually, he was placed in a nursing home and had to be moved several times. Martinez felt he was being mistreated in the nursing home and complained to Cramer. Cramer did not agree, contending that Martinez simply did not communicate well with the staffs of the facilities. Smith was transferred in and out of various facilities, sometimes because he developed infections at the facilities. As we found in *Martinez v. Guardianship of Smith*, 159 So. 3d 394, 401 (Fla. 4th DCA 2015), there were reasons for each transfer. Martinez sought to have Smith in a home where they could reside together, with nursing aids present, while Cramer wanted him in a nursing facility.

Given this friction, Cramer petitioned to be appointed plenary guardian of Smith in 2012. During a hearing regarding Smith's moving to another facility, the issue of Smith's marriage to Martinez came up. Cramer stated that he didn't think the parties were married, because without approval there was no authority to marry. The judge, however, acknowledged that his order determining capacity had not removed Smith's right to marry.

At that hearing, their certificate of marriage was introduced and admitted into evidence. After appointing Cramer as emergency temporary guardian ("ETG") and indicating that he would appoint Cramer as plenary guardian if a petition for appointment was filed, the judge said the following with respect to the marriage between Smith and Martinez:

> [M]y concern for you, Mr. Cramer, because I'm going to look to you to make proper decisions, is that *Mr. Smith is married*, apparently to Ms. Martinez, I have a certificate of marriage, that right was not removed, and her testimony I struck, but the essence of her testimony that was important to me had to do with the fact that she is able to provide companionship and companion care, those two things. Now for someone like Mr. Smith, it's great that he has good doctors, good nurses, and people like that from a medical point of view, but *that is not substitute [sic] for the type of personal ability that a spouse has to provide companion care to their spouse.* Like it or not . . . *she is his spouse,* she certainly is hands-on and it is often when a spouse is in an impaired condition like that one of the real benefits, even to someone in Mr. Smith's condition, is to still see his spouse, be able to know she's there and benefit from that, so while the ETG will be plenary in nature . . . you must take into consideration what I just said about Ms. Martinez being able to have close and continuing contact, providing she behaves herself, with her husband, because I think Mr. Smith still looks out to her . . . .

(Emphasis added). After this hearing, however, the presiding judge was disqualified for remarks during this proceeding regarding Martinez. *See Martinez v. Smith*, 111 So. 3d 206 (Fla. 4th DCA 2013).

When Cramer was appointed ETG, the court also appointed an attorney for Smith, Lynne Hennessey. Almost immediately, Hennessy initiated a petition to annul the marriage based solely upon the allegation that court approval was not obtained prior to the marriage. Cramer did petition and was appointed plenary guardian of Smith in 2013. Later, the court authorized Cramer to pursue annulment of the marriage and to retain counsel. Cramer was substituted as a party, but it appears from the record that Hennessey continued to litigate the issue of annulment at the hearing on the matter. Thus, it appears that Hennessey, as Smith's court-appointed attorney, represented the guardian as the substituted party during the annulment proceedings.

6

After the petition for annulment was filed, Martinez filed a motion to ratify the marriage, noting the foregoing facts and also the former judge's approval of the marriage.

Hennessey, purportedly on behalf of Smith even though Cramer had been substituted as the petitioning party, moved for summary judgment on the ground that section 744.3215, Florida Statutes (2013), requires approval prior to the marriage. The court ruled on the motion to ratify the marriage and the summary judgment at the same time. As the evidence was undisputed that court approval prior to the marriage was not obtained, the court granted summary judgment and annulled the marriage. The court denied the motion to ratify without stating any grounds other than the failure to obtain prior court approval. Martinez appeals.

The question presented in this appeal is whether the failure to obtain court approval of the parties' marriage prior to its solemnization renders the marriage absolutely void, as the majority holds, or whether it is simply voidable and thus could be approved by the court after the fact. Because the failure to obtain pre-marriage court approval would render the marriage only voidable, and Smith retained his right to marry, I would hold that the court could ratify the marriage and essentially did so prior to the appointment of the ETG. Moreover, as the approval should be based upon Smith's competency to enter into the marriage contract, and there is no evidence in this record to show that Smith was incompetent to enter into a marital relationship, I would reverse and direct the court to approve the marriage.

Marriage is a fundamental right. As noted both by the Supreme Court and the original presiding judge in these proceedings, it "shape[s] an individual's destiny." *Obergefell*, 135 S.Ct. at 2599. For elderly individuals, having a caring spouse can make all the difference between a life of loneliness and a life of compassionate care. As the presiding judge said in the present case, "it is often when a spouse is in an impaired condition [] that one of the real benefits, even to someone in Mr. Smith's condition, is to still see his spouse, be able to know she's there and benefit from that." Therefore, courts should be loath to interfere with this fundamental right.

A marriage is considered a contract, although it is not just a simple civil contract, as it is an important institution of society.

> To constitute a valid marriage, the marital contract must be voluntarily entered into in good faith for the purposes

7

actuating such contracts, the parties must be legally eligible to make the contract, and their status must be such that the union will not be contrary to public policy or obnoxious to the prevailing social mores.

*Goldman v. Dithrich*, 179 So. 715, 717 (Fla. 1938).

While "insanity" renders a marriage void, very few other prohibitions on the marriage relationship render a marriage void *ab initio* as opposed to being voidable. A marriage is void when it is impossible under the law for the parties to correct or ratify it by any subsequent conduct. 25 Fla. Jur. 2d, Family Law § 36. For instance, a bigamous marriage is void because it is prohibited. *See Jones v. Jones*, 161 So. 836, 832 (Fla. 1935). Similarly, an incestuous marriage is absolutely prohibited. *See* § 741.21, Fla. Stat. (2013). On the other hand, a marriage is merely voidable where the marriage is not absolutely illegal and the parties could ratify it. A marriage entered into by minors without parental consent, as an example, is generally considered voidable, not void. *See, e.g.*, *Needam v. Needam*, 33 S.E.2d 288 (Va. 1945); *Matturro v. Matturro*, 111 N.Y.S.2d 533 (N.Y. 1952).

What is important in this case is that the right to marry was *not* removed from Smith at the time of the marriage ceremony. Only a limited guardian of the property was appointed to manage his financial affairs only. Thus, Smith was not incompetent or "insane" and legally disqualified from marriage. Section 744.3215(2)(a), Florida Statutes (2013), does provide that where the right to contract has been removed, the right to marry is subject to court approval.[3] It does not state that marriage is prohibited unless approval is given prior to the marriage. Where a marriage is prohibited, the legislature knows how to say it. *See* § 741.21, Fla. Stat. (2013).

_____

[3] The provision requiring court approval is a late addition to the statute, having been enacted in 2006. *See* Ch. 2006-178, § 10, Laws of Fla., eff. July 1, 2006. This was first proposed in 2005 in the House of Representatives in House Bill 1615. The staff analysis to that bill states, in part: "Emphasizing the importance of an incapacitated person's right to quality of life, clarifying which rights cannot be delegated, reinforcing the significance of the right to marry[.]" The bill provides that the right to marry be subject to court approval so that a judicial determination can be made as to whether the ward understands the marriage contract and is not a likely victim of abuse or financial exploitation. Staff Analysis, HB 1615, 4/13/2005. http://www.myfloridahouse.gov/Sections/Documents/loaddoc.aspx?FileName= h1615a.FFF.doc&DocumentType=Analysis&BillNumber=1615&Session=2005

As such, and consistent with an understanding of the difference between void and voidable marriages, I conclude that the failure to obtain court approval prior to the marriage would render it at most voidable, not void. The court can ratify the marriage, after the fact, if, as in this case, neither party was legally disabled from marriage. As the marriage is a civil contract, contractual provisions may be ratified, even where the contracting party is incompetent at the time of its execution. *See Perper v. Edell*, 35 So. 2d 387 (Fla. 1948). Should we not extend that principle to a marriage contract? What is the harm to allowing a court to determine post-marriage whether the elderly person understands that he is married and ensure that he has not been taken advantage of financially by the marriage?

By treating the failure to secure court approval prior to the marriage as voiding the marriage without inquiry, the court has effectively prevented Smith from the comfort and companionship of a spouse, something he most likely desperately needs in his declining years. The first judge recognized that and expressly approved the marriage, albeit not by a written order. On this record, there is nothing to suggest that Smith did not understand the contract. Indeed, he asked Martinez to marry him prior to any incapacity. And there was no testimony that Martinez was taking financial advantage of him. To the contrary, Smith's divorce lawyer testified that Martinez was paying many of Smith's bills. I think it is a travesty that this frail man has been deprived of his wife by judicial fiat where there is no intrinsic invalidity to the marriage itself.

I would disagree with Judge May's concurring opinion that, because the court denied the motion to ratify the marriage, we should affirm, leaving factual determinations to the trial court. First, the court clearly denied the motion because it concluded that the marriage was void pursuant to the statute. Second, if the court had ruled that the ward did not understand the marriage contract or had been taken advantage of financially, then I would reverse as there is simply no evidence in this record to support either contention. In fact, the evidence is quite the opposite—that Smith, at the time of the marriage, knew and desired the marriage. And there is absolutely no evidence of financial exploitation. Moreover, the petition for annulment did not allege any incapacity or financial exploitation. The sole and only ground for annulment was the failure to obtain court approval prior to the marriage.

In addition to the foregoing, I would also hold that Hennessey, as attorney for the ward, had no authority to petition for annulment of the marriage on his behalf. At the time that the attorney was appointed, Smith was non-verbal and did not communicate to the attorney any desire to

have his marriage to Martinez annulled. The court appointed the attorney to represent Smith "in all matters pending under Section 744.3031(2) Petition for Determination of Temporary Guardian . . . ." The attorney's authority did not extend to filing a petition for annulment of his marriage. Further, section 744.102(1), Florida Statutes, defines the role of an attorney for an alleged incapacitated person:

> "Attorney for the alleged incapacitated person" means an attorney who represents the alleged incapacitated person. The attorney shall represent the expressed wishes of the alleged incapacitated person to the extent it is consistent with the rules regulating The Florida Bar.

§ 744.102 Fla. Stat. (2013). As there is no evidence on the record that Smith himself expressed any wish to annul his marriage, there is nothing to support Hennessey's filing of this petition.

Further, although Cramer, as guardian, was granted substitution in the petition for annulment after his appointment, this should not cure any lack of authorization to commence this proceeding. Indeed, it has only raised more concerns and further denial of fundamental due process. Cramer continued to be represented by Hennessy, which violated section 744.331(2)(c), Florida Statutes (2013). That statute prohibits an attorney representing the incapacitated person from serving as guardian or counsel for the guardian. As independent counsel is essential to protect the due process rights of the incapacitated person, the order granting the petition for annulment should be reversed for this fundamental conflict of interest. *See In re Fey*, 624 So. 2d 770 (Fla. 4th DCA 1993).

Finally, although not raised, I do not believe that due process of the ward was sufficiently protected, even if the guardian could bring the petition for annulment. Where a guardian seeks to pursue a dissolution of marriage on behalf of the ward, the guardian must seek authority. Before the court may grant authority, section 744.3725(1), Florida Statutes (2013), requires the court to appoint independent counsel for the ward. Additionally, section 744.3725(5), Florida Statutes (2013), requires the court to find by clear and convincing evidence that the action of dissolving the marriage is in the best interests of the incapacitated person. I would apply these same provisions to an annulment of a voidable marriage. Clearly, the ward did not have independent counsel, nor did the court consider his best interests in annulling his marriage.

The Legislature stated its intent in the guardianship laws as protecting the rights of the ward to the maximum extent possible:

> The Legislature finds that adjudicating a person totally incapacitated and in need of a guardian deprives such person of all her or his civil and legal rights and that such deprivation may be unnecessary. . . . Recognizing that every individual has unique needs and differing abilities, the Legislature declares that it is the purpose of this act to promote the public welfare by establishing a system that *permits incapacitated persons to participate as fully as possible in all decisions affecting them*; that assists such persons in meeting the essential requirements for their physical health and safety, *in protecting their rights,* in managing their financial resources, and in developing or regaining their abilities to the maximum extent possible; and *that accomplishes these objectives through providing, in each case, the form of assistance that least interferes with the legal capacity of a person to act in her or his own behalf.* This act shall be liberally construed to accomplish this purpose.

§ 744.1012, Fla. Stat. (2013) (emphasis added). This has not happened in this case. Instead, this frail gentleman has been deprived of his fundamental right to marry, in proceedings which violated his fundamental rights of due process and without a consideration of his best interest. I think this totally thwarts the Legislature's express intent.

For all of the foregoing reasons, I would reverse the annulment of the parties' marriage and remand with directions to enter an order ratifying the marriage, as the original trial judge verbally approved it in prior proceedings. In the alternative, I would reverse for new proceedings because of the failure to afford the ward due process and independent counsel.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**