DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE BLIND MONK, LLC,**
Appellant,

v.

**USO NORGE WHITNEY, LLC,** a Delaware limited liability company,
and **410 EVERNIA STREET PARTNERS, LLC,** a Florida
limited liability company,
Appellees.

No. 4D22-569

[July 19, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Richard L. Oftedal, Senior Judge; L.T. Case No. 50-2018-CA-001997-XXXX-MB.

Jack Scarola of Searcy Denney Scarola Barnhart & Shipley, P.A., West Palm Beach, and Kara Rockenbach Link and Daniel M. Schwarz of Link & Rockenbach, PA, West Palm Beach, for appellant.

Peter M. Armold of Gary Dtyrych & Ryan, P.A., North Palm Beach, for appellee 410 Evernia Street Partners, LLC.

WARNER, J.

Appellant, a commercial condominium tenant (Tenant), sued its Landlord and the Purchaser of Tenant's condominium unit over the failure of the Landlord to abide by a right of first refusal (ROFR) in Tenant's lease. As to Landlord, Tenant claimed that it was entitled to specific performance of its ROFR. As to Purchaser, Tenant sought rescission of the condominium sale, because the sale was in derogation of the ROFR. Landlord and Purchaser moved for summary judgment, contending that Tenant had not shown that it was ready, willing, and able to complete the purchase price. The trial court agreed with Landlord and Purchaser and granted summary judgment. We reverse, as neither Landlord nor Purchaser provided Tenant with the purchase price and terms of their sale of the unit. Thus, Tenant was not required to prove itself ready, willing, and able to comply with an undisclosed purchase agreement.

Tenant leases Unit 107 of the Whitney Condominium where it operates a wine and tapas bar. Its lease from Landlord commenced in March 2010 and contained a ROFR, which provided:

> RIGHT OF FIRST REFUSAL: The premises is not currently being offered to sale but Landlord and Tenant recognize the possibility that it may be offered for sale at some later date. Tenant may desire to purchase the property if and when it is offered for sale. In consideration of the premises and of the payment of the rent by Tenant, Landlord grants to Tenant, a right of first refusal with respect to the above-described property as follows:
>
> 1. If Landlord desires to sell the above-described property and receives from a third party a bona fide offer for the purchase thereof, Landlord agrees to disclose the terms of such offer to Tenant, in writing, with seven (7) days following receipt of the offer.
>
> 2. Tenant shall have thirty (30) days after receiving notice of the terms of the offer within which to elect to purchase the property on terms identical to those offered by the third party. Such election shall be made by written notice to Landlord at address set forth herein, accompanied by a check for ten percent (10%) of the purchase price, to be applied to the purchase price at closing. Within five (5) days thereafter, the parties shall enter into a formal contract of sale expressly including all terms of the original bona fide offer made to Landlord, except as the parties may mutually agree. If the contract is rescinded for any reason as set forth therein, all amounts paid by Tenant to Landlord shall be returned.
>
> 3. If Tenant fails to give the notice and to tender the payment as provided in Paragraph 2, Landlord shall be relieved of all liability to Tenant hereunder and may dispose of the property as Landlord sees fit.

In October 2016, a realtor representing Landlord notified Tenant's president that Landlord was offering the Whitney units for sale to the current tenants. The realtor asked Tenant's president if he would be interested in purchasing Unit 107. Tenant's president replied that he would be interested in the purchase and would look into financing. Tenant's president requested any information about outstanding offers on Unit 107, citing his ROFR.

About a week later, the realtor advised Tenant's president that Unit 107 was appraised at $250,000 and Landlord had an offer on the unit. However, the realtor did not disclose the specific terms of the outstanding offer. Tenant's president replied that he would follow up later that week. However, the next day, the realtor notified Tenant's president that Landlord was moving to a bulk sale of the entire Whitney building and was suspending all retail sales in the building "to keep inventory straight[.]"

Landlord moved forward with the bulk sale of 139 Whitney condominium units to Purchaser. The sale agreement notified and made available to Purchaser the leases for the condominium units prior to closing. The agreement provided that Purchaser had the obligation to review all materials submitted. Landlord did not disclose to Tenant any offer to purchase before closing on the sale. Tenant learned of the bulk sale when Tenant received notice to send future rent checks to Purchaser.

After the sale, Tenant filed a complaint against both Landlord and Purchaser, bringing a claim for rescission of the contract and cancellation of the deed against both defendants, as well as claims for specific performance and breach of contract against Landlord and a claim for tortious interference with a contract against Purchaser. Tenant sought rescission of the deed to allow it to exercise its ROFR under its lease. The specific performance count against Landlord demanded that Landlord comply with the ROFR by informing Tenant of the purchase price Landlord had negotiated with Purchaser for Unit 107 and providing Tenant with the opportunity to purchase the unit under the same terms. Alternatively, Tenant sued Landlord for breach of the ROFR and requested damages.

Purchaser filed a motion to dismiss Tenant's rescission and tortious interference claims. Purchaser argued that Tenant could not receive rescission and specific performance because Tenant was a stranger to the purchase contract, and Tenant had not alleged it was financially ready, willing, and able to purchase Unit 107. Tenant filed a response, arguing that the facts pled were sufficient to excuse it from the usual "ready, willing and able" test, because Tenant had not been provided Unit 107's purchase price and therefore could not prove its ability to match that price. After a hearing, the trial court denied Purchaser's motion to dismiss.

Purchaser answered Tenant's complaint, denying notice of Tenant's ROFR and raising the affirmative defenses that Tenant had not pled it was ready, willing and able to purchase Unit 107. It also alleged that Tenant's ROFR was not triggered, because purchase of Unit 107 would not be

identical to Purchaser's purchase by bulk sale of the 139 units in the Whitney.

After some discovery, Purchaser moved for summary judgment against Tenant's claims for rescission and tortious interference, but only the rescission claim is pertinent to this appeal. Purchaser argued that Tenant had not shown that it was ready, willing and able to purchase the condominium unit because the "commitments" which Tenant had secured from its president's parents were not exchanged for consideration, and therefore were not legally binding.

Tenant filed a response, arguing it was unable to obtain a more traditional financial commitment because the purchase price and terms were undisclosed. Tenant argued that without a purchase price for the unit, all Tenant could obtain was its president's parents' commitments, which Tenant argued were binding.

At the hearing on the summary judgment, Tenant repeated these arguments. Counsel noted that neither Landlord nor Purchaser provided Tenant with the terms of any purchase, asking "[h]ow can [Tenant] go to any lender and say I want to borrow the funds necessary to meet this third-party offer and exercise my right of first refusal if he's never told what it is he needs to match?"

The trial court issued an order granting Purchaser's motion for summary judgment on the rescission count. The trial court found that both commitments were gifts rather than binding contracts to loan. In addition, the trial court noted that rescinding the entire bulk sale would serve no purpose if Tenant was not entitled to specific performance.

Tenant moved for reconsideration, arguing that the trial court misunderstood Tenant's objectives because Tenant did not seek to rescind the entire bulk sale but only to exempt Unit 107 from the purchase. Tenant also moved for rehearing, again arguing the "practical impossibility" of proving its ability to match an offer which was not disclosed. The trial court denied the motion.

Tenant now appeals the summary judgment as to Purchaser only, as the summary judgment as to Landlord is not a final order while other claims against Landlord remain pending.

Appellate courts review a trial court's entry of summary judgment de novo. *United Auto. Ins. Co. v. Lauderhill Med. Ctr. LLC*, 350 So. 3d 754, 756 (Fla. 4th DCA 2022). Summary judgment is appropriate where the

4

movant shows no genuine disputes as to any material facts remain and the movant is entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510(a).

Tenant argues that summary judgment was improper on its rescission claim because Purchaser's contention that Tenant had no proof that it was ready, willing and able to close on the sale of Unit 107 could not be decided before Landlord had complied with the ROFR by submitting the offer of purchase to Tenant. Genuine issues of material fact remained regarding the purchase price for Unit 107. Without the tender of the purchase price and terms of offer, Tenant could not exercise its ROFR. Thus, Tenant contends that Unit 107's purchase price should have been determined before evaluating whether Tenant had the ability to complete the sale and before ruling on Tenant's rescission count against Purchaser.

While Purchaser concedes that Unit 107's purchase price was not determined below, Purchaser argues that the specific purchase price is not necessary to resolve whether the commitments were enforceable, which is dispositive as to whether Tenant was "ready, willing and able" to perform. Tenant replies that the trial court could not perform the "ready, willing and able" analysis without the specific purchase price, and the trial court erred in granting summary judgment on this ground.[1] We agree with Tenant.

Although Landlord and Purchaser entered into a bulk sale of the remaining condominium units in the Whitney, this does not preclude either rescission or cancellation of the deed to Unit 107, or specific performance of the ROFR. In *Denco, Inc. v. Belk*, 97 So. 2d 261 (Fla. 1957) (*Denco I*), a lease agreement contained a ROFR, yet the landlord sold the property to a third party as part of a sale of the leased property and other properties. *Id.* at 262. The tenant filed suit, claiming its right to exercise the ROFR. *Id.* at 262–63. As relief, it requested cancellation of the deed to the purchaser of the leased property and for the landlord to notify the tenant of the purchase price of the property so that the tenant could purchase the property. *Id.* at 263. The trial court denied a motion to dismiss the cause of action, and a petition for certiorari was taken to the

---

[1] Purchaser claims that Tenant made strategic decisions not to seek the determination of a purchase price. But our review of the record shows that Tenant through discovery and pleadings raised the issue continually throughout the litigation, thus preserving the argument made on appeal. The complaint itself demanded specific performance by the Landlord offering Tenant Unit 107 at the price Purchaser offered to pay. In addition, through discovery, Tenant sought to determine what that purchase price was, but Landlord objected to all requests for production of documents revealing the unit pricing in the sales contract.

5

Florida Supreme Court, which held that the trial court's denial of dismissal was proper:

> The real and basic issue in this case, however, is simply whether the purchaser of this land, not only charged with knowledge of the rights of the lessee as a matter of law but placed on direct notice by the very provisions of the deed he accepted, may defeat the substantial rights of the lessee under the terms of this lease. Denco is not a bona fide purchaser. Denco, Inc. comes within the rule that persons dealing with an owner of land for purposes of sale or purchase who have knowledge of possession by a lessee, are placed on inquiry as to the full terms and conditions of the lease, *including a provision granting a right of first refusal of purchase to the lessee if the lessor decides to sell the property during the term of the lease. We think the law and every concept of equity and good conscience requires Denco, Inc. to recognize the rights of the lessee under all of the provisions of the lease under which he holds possession of the property, not the least of these being the option above alluded to.*

*Id.* at 265 (emphasis added) (internal citations omitted).[2]

On remand from *Denco I,* the trial court determined the optioned parcel's value by allocating a portion of the bulk purchase, which the Second District approved on appeal, finding "no error inherent in the chancellor's method of allocating a proportionate part of the total price to the property covered by appellee's option." *Denco, Inc. v. Belk*, 109 So. 2d 201, 201 (Fla. 2d DCA 1959) (*Denco II*). In approving the trial court's method, the Second District wrote that any of the purchaser's objections "relating to the uncertainty of the price allocable to the property leased by appellee, and the chancellor's method of determination, are occasioned by [the purchaser's] own act, i.e., purchasing the property in question, together with other properties, for a lump sum payment, with knowledge of appellee's first refusal option." *Id.*

*Denco I* and *Denco II* make clear that where a bulk sale of property occurs, some of which is the subject of a ROFR, an owner is not excused from its obligation to offer the property to the ROFR's holder. To provide

---

[2] In this case, Purchaser had at least constructive knowledge of the Tenant's ROFR, because the active leases were among the due diligence materials which Purchaser had the obligation to review and approve, and it was provided all of the leases on the Whitney condominium units.

the holder with its contractual right, a trial court must enforce the ROFR and determine what portion of the bulk sale purchase price should be allocated to the ROFR property.

Similarly, in *Whyhopen v. Via*, 404 So. 2d 851 (Fla. 2d DCA 1981), the landlord refused to permit the tenant to exercise a right of first refusal where the landlord sold the leased property in a bulk sale with other properties. *Id.* at 852. The tenant filed suit against the landlord and the purchaser for cancellation of the deed, specific performance, damages, and tortious interference. *Id.* The trial court granted a motion to dismiss, because the tenant had not sought to exercise an option to purchase all the properties. *Id.* The appellate court rejected that holding, relying on *Denco I* to hold that the tenant was not required to purchase the entire properties of the bulk sale in order to exercise its option. *Id.* at 852–53 (citing *Denco I*, 97 So. 2d 261). The court also noted that:

> Once the landlord evidenced an intention to sell the property, tenants' right of first refusal was converted into an irrevocable option to purchase. *Vorpe v. Key Island, Inc.*, 374 So. 2d 1035 (Fla. 2d DCA 1979). The third-party purchaser is subject to this right.

*Id.* at 853.

Applying these holdings, once the Landlord decided to sell the unit, the Landlord had to comply with the ROFR. The ROFR required the Landlord to disclose the purchase price and terms to Tenant to allow Tenant to decide whether to exercise the ROFR to purchase. The Landlord failed to do that, and Tenant filed suit to obtain both specific performance and cancellation of the deed to Purchaser of Unit 107. Based upon *Denco I*, *Denco II*, and *Whyhopen*, not only did Tenant state a cause of action, but the trial court also had a duty to determine the purchase price and terms so that Tenant could obtain the benefit of its ROFR.

Instead of following *Denco I* and *Denco II*, Purchaser contended that, as the party seeking specific performance of a real estate contract, Tenant had to prove that it was ready, willing, and able to complete the purchase in order to exercise its ROFR. Purchaser relied on *Hollywood Mall, Inc. v. Capozzi*, 545 So. 2d 918 (Fla. 4th DCA 1989). However, *Capozzi* is inapplicable under the circumstances of this case.

In *Capozzi*, the buyer sought specific performance of an executed real estate contract between itself and the seller where all terms of the contract were established, and the purchase price was known. *Id.* at 919–20. The

7

trial court had granted specific performance, but we reversed, holding that the corporation which sought to purchase the property had not proven that it was ready, willing, and able to purchase. *Id.* at 920. In the opinion, we listed three non-exclusive methods by which a purchaser could prove it was ready, willing, and able to close on the transaction. *Id.* at 920–21.

As noted by Tenant in its brief, *Capozzi* has never been applied to a case involving an *option* to purchase or a ROFR. Thus, *Capozzi* does not provide guidance for specific performance where a purchase price is unknown.

In this case, pursuant to the ROFR, Landlord was contractually obligated to convey a firm purchase offer, including the price and terms, to Tenant. Tenant then would have a period of time to determine whether to accept the offer. Upon acceptance, a binding purchase contract would be formed. Only if Landlord failed to sell to Tenant in accordance with those terms would Tenant have to show that it was ready, willing, and able to complete the purchase in accordance with those terms in any suit for specific performance. Landlord and Purchaser cannot preemptively determine that Tenant has no ability to comply with the ROFR or demand that Tenant show its ability to close without extending to Tenant a purchase offer. Moreover, as Tenant's counsel stated, how could a party obtain a binding financial commitment without the third-party knowing what amount of money would be needed to close the transaction?

We liken this case to *Jarvis v. Peltier*, 400 S.W. 3d 644 (Tex. App. 2013). There, the party holding an option on property discovered that the property had been sold and deeded to a third-party. *Id.* at 648. The optionor sought to exercise his option and demanded to know the price paid by the purchaser, which the seller refused to disclose. *Id.* at 649. The optionor filed suit against both the seller and the purchaser. *Id.* The trial court granted the purchaser's motion for summary judgment, partially on the ground that the optionor had not complied with the option's terms. *Id.* On appeal, the court reversed, noting that the optionor must be excused from failing to comply with the option's terms, because the purchase price was never disclosed to him.

> [W]hen the rightholder [option holder] learns of a sale in violation of his right, he again has the opportunity to elect to purchase or decline to purchase within the time frame specified in the contract creating the right of first refusal. *The rightholder does not have a duty to act in order to exercise his preferential purchase right unless and until he receives a reasonable disclosure of the terms of the sale.* The new

> property owner has a duty to make reasonable disclosure of the terms of the purchase to the rightholder.

*Id.* (emphasis added) (internal citations omitted).  Here, both Landlord and Purchaser failed to provide Tenant with the purchase price and terms of the sale of Unit 107.  Until they provided this information, Tenant had no "duty to act."  As Tenant had no duty to act, Tenant also had no duty to show that it was ready, willing, and able to meet some undisclosed purchase price.

We thus reverse the summary judgment and remand for further proceedings.  Pursuant to *Denco I, Denco II* and *Whyhopen*, the court must first determine the purchase price and terms of the sale of Unit 107 in accordance with the agreement between Landlord and Purchaser. Discovery may reveal that the parties assigned a specific value to the unit in the sales contract, or the court may be required to determine the sale price.[3]  Once the purchase price and terms are determined, then according to the ROFR, Tenant will have thirty days in which to elect whether to purchase the property.  In order to prevent useless judicial labor, the court may wish to defer consideration of Tenant's rescission claim until Tenant decides whether or not to exercise its ROFR.

*Reversed and remanded for further proceedings consistent with this opinion.*

MAY and GERBER, JJ., concur.

*         *         *

**Not final until disposition of timely filed motion for rehearing.**

---

[3] In *Denco I*, the supreme court cited with approval *Brenner v. Duncan*, 27 N.W.2d 320 (Mich. 1947).  *Denco I*, 97 So. 2d at 265.  *Brenner* dealt with a sale of lands, which, under similar circumstances to the case here, involved an option to purchase without establishment of a price.  The court held that "it is competent for the court to fix the option price, afford the optionee an opportunity to accept and thereupon specifically enforce the resulting contract."  *Brenner*, 27 N.W.2d at 322.